281 P.3d 1053

Daniel Wayne COOK; Beau John Greene;
Eldon Schurz, Plaintiffs/Appellants,

v.

STATE of Arizona; Arizona Department
of Corrections; Charles Ryan, Director,
Arizona Department of Corrections, in
his official capacity, Defendants/Appel-
lees.

No. 1 CA–CV 11–0629 A.

Court of Appeals of Arizona,
Division 1, Department D.

July 26, 2012.

Jon M. Sands, Federal Public Defender By Cary S. Sandman, Assistant Federal Public Defender, and Jennifer Y. Garcia, Assistant Federal Public Defender, Phoenix, Attorneys for Plaintiffs/Appellants.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Division Chief Counsel, and Jeffrey A. Zick, Section Chief Counsel, and Jonathan Bass, Assistant Attorney General, Capital Litigation Section, Phoenix, Attorneys for Defendants/Appellees.

**OPINION**

NORRIS, Judge.

¶1 Daniel Wayne Cook, Beau John Greene, and Eldon Michael Schurz[1] (collectively, "Appellants") appeal the superior court's dismissal of their complaint alleging Arizona's statute authorizing lethal injection, Arizona Revised Statutes ("A.R.S.") section 13–757(A) (2010), violates the separation of powers doctrine embodied in Article 3 of the Arizona Constitution. Appellants argue, as they did in the superior court, the statute unconstitutionally delegates legislative power to the Arizona Department of Corrections without providing sufficient standards to restrain the Department's discretion. Appellants also argue the statute unconstitutionally infringes on the Judiciary's duty to exercise review by not incorporating any restrictions on the Department's "authority to devise and revise [its] execution protocol," thereby effectively prohibiting judicial review of last-minute changes to the protocol.

¶2 Based on the record before us, and for the reasons discussed below, we hold A.R.S. § 13–757(A) does not violate the Arizona Constitution's separation of powers doctrine. We recognize, however, the Department's practice of making last-minute changes to its lethal injection protocol threatens adequate judicial review and therefore raises a legitimate, and troubling, separation of powers concern. Nevertheless, because the record before us does not reflect the concern has developed into a violation of the Arizona Constitution's separation of powers doctrine, we affirm the judgment of the superior court.

**FACTS AND PROCEDURAL BACKGROUND**

¶3 Appellants are in the Department's custody and have been sentenced to death. Appellants sued the State and the Department, alleging A.R.S. § 13–757(A) "violates the separation-of-powers principle of Article 3 of the Arizona Constitution." Subsection 13–757(A) reads as follows:

1. Thomas Paul West was also a Plaintiff and originally identified as an Appellant in the caption. Because West was executed on July 19, 2011, we have amended the caption to remove West as a Plaintiff/Appellant.

The penalty of death shall be inflicted by an intravenous injection of a substance or substances in a lethal quantity sufficient to cause death, under the supervision of the state department of corrections.

In support of their claim, Appellants alleged the Department had deviated from the lethal injection protocol[2] it developed pursuant to the statute in administering lethal injections to several individuals in 2010 and 2011. Appellants' alleged these deviations demonstrated "the Legislature [ ] failed to impose minimal procedural standards on the [Department]'s policy discretion" and the Department "has taken advantage of this failure by drafting an open-ended Protocol that [it] avows it will follow—except when it will not." Appellants further alleged the statute "give[s] the Department of Corrections the authority to draft open-ended execution protocols that it can change at the last second to perpetually evade judicial review."

¶ 4 The State and the Department moved to dismiss the complaint, arguing A.R.S. § 13–757(A) provides sufficient standards to guide the Department's discretion and the "protocol has always been subject to judicial review." The superior court granted their motion, finding no "unconstitutional delegation of authority." Quoting from *Peters v. Frye*, 71 Ariz. 30, 36, 223 P.2d 176, 180 (1950), the superior court emphasized that "courts are always alert to grant a review where it is sufficiently shown that a subordinate agency has abused its discretion."

## DISCUSSION[3]

*I. Legislature's Delegation of Authority to the Department*

■ ¶ 5 Section 13–757(A) instructs the Department to "supervis[e]" the "intravenous injection of a substance or substances in a lethal quantity sufficient to cause death." Appellants argue that because this statute contains "no requirement as to how to deter-

mine a lethal dosage, how to establish intravenous access, or how to obtain the necessary substances," it is an "unconstrained directive" that "represent[s] a total abdication of authority on the part of the Legislature" and "a flagrant violation of Article 3 of the Arizona Constitution." We disagree.

■ ¶ 6 The Arizona Constitution mandates that the Legislative, Executive, and Judicial "departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. The separation of powers doctrine "protect[s] one branch against the overreaching of any other branch" and is "part of an overall constitutional scheme to protect individual rights." *State v. Prentiss*, 163 Ariz. 81, 84–85, 786 P.2d 932, 935–36 (1989). Although "[u]nder the doctrine of 'separation of powers' the legislature alone possesses the lawmaking power and while it cannot completely delegate this power to any other body, it may allow another body to fill in the details of legislation already enacted." *State v. Ariz. Mines Supply Co.*, 107 Ariz. 199, 205, 484 P.2d 619, 625 (1971). Thus, the Legislature may delegate "the job of formulating ... guideline[s] to an agency that is likely better equipped to undertake the task." *Griffith Energy, L.L.C. v. Ariz. Dep't of Revenue*, 210 Ariz. 132, 137, ¶ 24, 108 P.3d 282, 287 (App. 2005) (citing *Arizona Mines*, 107 Ariz. at 205, 484 P.2d at 625). We have long recognized that "[a]lthough the Arizona Constitution created separate and distinct branches of government, ... an unyielding separation of powers is impracticable in a complex government, and some blending of powers is constitutionally acceptable." *Andrews v. Willrich*, 200 Ariz. 533, 535, ¶ 7, 29 P.3d 880, 882 (App.2001) (citation omitted).

■ ¶ 7 In this case, the Legislature, through A.R.S. § 13–757(A), has appointed the Department to supervise (1) the infliction

---

2. Ariz. Dept. of Corr., Dept. Order 710, Execution Procedures (Jan. 25, 2012, as amended on June 5, 2012).

3. We review de novo the constitutionality of the statute and "begin with a strong presumption that laws are constitutional." *Martin v. Reinstein*, 195 Ariz. 293, 301, ¶ 16, 987 P.2d 779, 787

(App.1999). We also review de novo the superior court's dismissal of Appellants' claims for failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6). *Canyon Ambulatory Surgery Ctr. v. SCF Ariz.*, 225 Ariz. 414, 417, ¶ 7, 239 P.3d 733, 736 (App.2010).

of the penalty of death by (2) an intravenous injection with (3) substances in a lethal quantity sufficient to cause death. The statute accordingly provides "a sufficient basic standard, i.e., a definite policy and rule of action which will serve as a guide for" the Department. *Arizona Mines*, 107 Ariz. at 205–06, 484 P.2d at 625–26 (quoting *Dep't of Health v. Owens–Corning Fiberglas Corp.*, 100 N.J.Super. 366, 242 A.2d 21, 29–30 (N.J.Super.Ct.App.Div.1968)). In addition, the record reflects it would be impracticable for the Legislature to supply the details of the execution process itself. The Department's current execution protocol spans 35 pages and details the procedures to be followed from "thirty-five days prior to the day of execution ... through the execution." The protocol outlines a complex procedure involving coordination with various Department personnel in different Department facilities, the Arizona Board of Executive Clemency, witnesses, state and local law enforcement, and the news media. It contains detailed instructions on the various chemicals to be used, how they should be administered by Department personnel, and how the execution will be supervised and regulated. It is both reasonable and constitutionally acceptable for the Legislature to delegate the details of implementing the death penalty to an agency that is "better equipped to undertake the task" of ensuring it is implemented as uniformly and humanely as possible. *Griffith Energy*, 210 Ariz. at 137, 108 P.3d at 287.

¶ 8 Moreover, the United States Constitution also implicitly guides and limits the Department's discretion by requiring the Department's protocol to "contain[ ] sufficient safeguards to prevent improper anesthetization" to avoid a " 'substantial risk of serious harm' and ... serious pain and suffering" that would qualify as "cruel and unusual punishment" under the Eighth Amendment. *Dickens v. Brewer*, 631 F.3d 1139, 1144 (9th Cir.2011) (discussing and applying *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008)).

¶ 9 For these reasons, we hold A.R.S. § 13–757(A) provides sufficient standards to guide the Department's discretion and thus does not violate the Arizona Constitution's separation of powers doctrine.[4]

## II. Alleged Infringement of Judicial Review

¶ 10 Appellants also argue "the Legislature has, by granting the Executive Branch the authority to devise and revise an execution protocol at the Executive's whim, given [the Department] the means to perpetually deny prisoners the right of judicial review — and perpetually deny the judiciary the ability to exercise its constitutionally granted authority." Thus, Appellants argue the Legislature, by not incorporating into the statute any restrictions on the Department's authority to "devise and revise" an execution protocol, and the Department, by taking "advantage of this sweeping latitude" to deviate from or alter the protocol, have "acted in concert" to undermine the Judiciary's duty to review whether the lethal injection procedures actually used by the Department in any given execution pass constitutional muster.

¶ 11 In making this argument, Appellants point to several examples in the past 14 months in which inmates facing the death penalty have challenged last-minute changes to the Department's execution protocol in Arizona and federal courts. They emphasize the Department "changed its Protocol a mere eighteen hours before the execution of Donald Beaty," and "deprived Mr. Beaty of the ability to have the courts adequately review this fundamental change." In that case, the Arizona Supreme Court refused to stay Beaty's execution based on "the State's avowal that the only change in the execution proto-

---

4. Our analysis is based on the Arizona Constitution's "strong prohibition upon the usurpation of the powers of one branch of government by another branch." *Martin*, 195 Ariz. at 322, ¶ 105, 987 P.2d at 808. We also recognize, as the State and the Department point out, that courts in other jurisdictions have also rejected similar arguments. *See, e.g., Brown v. Vail*, 169 Wash.2d 318, 237 P.3d 263, 269 (2010) ("[T]he superintendent's supervisory role as to executions plainly encompasses decision-making powers about how lethal injection is to be accomplished."); *Sims v. State*, 754 So.2d 657, 670 (Fla.2000) ("[W]e do not find that the Legislature's failure to define the chemicals to be administered in the lethal injection necessarily renders the statute unconstitutional.").

col [was] to substitute" one drug for another in the three-drug execution chemicals. Order, *State v. Beaty*, No. CR–85–0211–AP/PC (Ariz.Sup.Ct. May 25, 2011). One justice, however, dissented from the order denying the stay, emphasizing "the application now before us was created by the State's last-minute decision to substitute one barbiturate for another, and we have been compelled to address this issue literally overnight," adding that "justice would better be served by promptly addressing the issues raised by the State's actions in a less urgent setting." *Id.* at 3 (Hurwitz, V.C.J., dissenting).

¶ 12 The "last-minute decision" to modify the protocol in Beaty's case was not an isolated occurrence. When the Department changed its protocol "on the eve of [ ] two planned executions," the United States Court of Appeals for the Ninth Circuit, in *Towery v. Brewer*, 672 F.3d 650 (9th Cir.2012), "held oral argument less than 48 hours before the first scheduled execution," *id.* at 652, and explained that

> [b]ecause the death penalty is undeniably the most serious penalty available to a State, the procedures for such penalty must be implemented in a reasoned, deliberate, and constitutional manner. Over time, the State of Arizona, however, has insisted on amending its execution protocol on an ad hoc basis ... leaving the courts with a rolling protocol that forces us to engage with serious constitutional questions and complicated factual issues in the waning hours before executions. This approach cannot continue.

*Id.* at 653.

¶ 13 And, when faced again with last-minute changes to the protocol before another execution, the Ninth Circuit stressed:

> We embark upon this opinion with déjà vu, the feeling that we have been here

before, but with the knowledge that we will likely be here again.... The actual procedures followed during individual executions have not been consistent... [and] there is uncertainty as to how the next execution will be carried out. The State continues to cling to its discretion, all the while urging us — during oral argument in the waning hours before execution — to trust that it will exercise its discretion in a constitutionally permissible manner.

*Lopez v. Brewer (Lopez I)*, 680 F.3d 1068, 1070 (9th Cir.2012). *See also Lopez v. Brewer (Lopez II)*, 680 F.3d 1084, 1094–95 (9th Cir.2012) (Reinhardt, J., dissenting from the denial of rehearing en banc) ("In case after case, [the court has] been forced to rely on the ad hoc representations of the state's counsel in conducting one of the gravest responsibilities that [the court is] asked to perform: approving the state's plan to take a human life.").

 ¶ 14 We agree the Department's recent history of deviating from or changing its protocol at the last minute raises constitutional concerns,[5] as well as a separation of powers concern under the Arizona Constitution. We disagree with Appellants, however, "that the *Legislature* acted unconstitutionally when it passed an unconstitutional statute." (Emphasis in original.) The statute is constitutional for the reasons we have previously discussed. *See supra* ¶¶ 7–9. Nevertheless, we agree with Appellants that the Department's *implementation* of the statute raises a separation of powers concern; specifically, it threatens to prevent meaningful judicial review.

 ¶ 15 As our supreme court has recognized, "[o]nly when the legislative enactment 'unreasonably limits or hampers' the judicial system in performing its function is

---

5. As the Ninth Circuit recognized in *Towery*, "[b]ecause the death penalty is undeniably the most serious penalty available to a State, the procedures for such penalty must be implemented in a reasoned, deliberate, and constitutional manner." 672 F.3d at 653. The Department's last-minute changes to its protocol have raised serious concerns under the Eighth Amendment's prohibition of cruel and unusual punishment, *see id.* at 658–59, the Fourteenth Amendment's guarantee of an inmate's right to in-person visits with counsel, *see id.* at 658; *Lopez I*, 680 F.3d at 1077; *see also Ching v. Lewis*, 895 F.2d 608, 609–10 (9th Cir.1990) ("The fourteenth amendment guarantees prisoners meaningful access to the courts.... The opportunity to communicate privately with an attorney is an important part of that meaningful access."), and the Fourteenth Amendment's equal protection clause. *Towery*, 672 F.3d at 659–60; *Lopez I*, 680 F.3d at 1075–76.

article 3 [separation of powers] violated." *Prentiss*, 163 Ariz. at 84, 786 P.2d at 935 (citation omitted). "[I]n reviewing a claim that an act by one department would usurp the powers of another," *State v. Donald*, 198 Ariz. 406, 416, ¶ 37, 10 P.3d 1193, 1203 (App. 2000), or, in other words, whether there has been "a significant interference by one department with the operations of another department," *J.W. Hancock Enters., Inc., v. Ariz. State Registrar of Contractors*, 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984), courts in Arizona "have repeated and refined a group of factors to be considered." *Donald*, 198 Ariz. at 416, ¶ 37, 10 P.3d at 1203. These factors are (1) the essential nature of the power exercised by the branch alleged to have usurped the power of another branch; (2) the degree of control that branch assumes in exercising the power of the other branch; (3) the objective of that branch's exercise of power; and (4) the practical consequences of the action. *Id.; accord San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 211, ¶ 37, 972 P.2d 179, 195 (1999).

■ ¶ 16 Here, the fourth factor is most obviously implicated. As described above, the Department's last-minute revisions to its protocol have forced courts to confront "serious constitutional questions and complicated factual issues in the waning hours before executions." *Towery*, 672 F.3d at 653. Thus, the Department's recent practice of amending or deviating from its protocol at what could be characterized as the eleventh hour could have the practical consequence of obstructing judicial review of its changes. This practice therefore threatens to "usurp the powers," of the Judiciary, that is, its duty to exercise judicial review.

¶ 17 We note that as of June 5, 2012, the Department amended its protocol to include a choice of several different chemical mixtures for lethal injections and gave its Director "the sole discretion as to which protocol will be used for the scheduled execution," but required the Director to provide his decision "to the inmate in writing 7 days prior to the scheduled execution date." Therefore, under the amended protocol an individual sentenced to death is subject to, and could likely challenge the constitutionality of, any or all of the various chemical mixtures in advance of his or her scheduled execution date. In addition, the seven-day advance notice required by the amended protocol, although relatively short, is an improvement on the one-day or two-day notice provided by the Department in the past. We also note, however, that the protocol still disclaims that "[t]hese procedures shall be followed as written unless deviation or adjustment is required, as determined by the Director" and therefore the Department could presumably change without notice its guideline for providing notice of what mixture it plans to use for a certain execution.

¶ 18 Nevertheless, because Arizona courts have been able to provide review — albeit rushed — of the Department's changes to its protocol, and because the Department has amended its protocol to include additional provisions that, on their face, if implemented by the Department, should help ensure meaningful judicial review, we hold the Department has not yet violated the Arizona Constitution's separation of powers doctrine.

¶ 19 We underscore, however, the concern we have regarding the Department's past practice of altering the protocol on a last-minute basis. If the Department were to continue the practice in such a way as to unreasonably limit or hamper the courts from exercising meaningful judicial review of its actions, then, depending on the facts, we might be presented with a separation of powers violation. *See Prentiss*, 163 Ariz. at 84, 786 P.2d at 935 (separation of powers doctrine is violated "[o]nly when" legislation "unreasonably limits or hampers" the judiciary from performing its function).

## CONCLUSION

¶ 20 For the foregoing reasons, we affirm the judgment of the superior court.

CONCURRING: MAURICE PORTLEY, Presiding Judge and LAWRENCE F. WINTHROP, Chief Judge.