**139 Nev., Advance Opinion 37**

IN THE SUPREME COURT OF THE STATE OF NEVADA

ZANE MICHAEL FLOYD,
Appellant,
vs.
THE STATE OF NEVADA
DEPARTMENT OF CORRECTIONS;
AND JAMES DZURENDA, DIRECTOR,
NEVADA DEPARTMENT OF
CORRECTIONS,
Respondents.

No. 84081

FILED

SEP 28 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a complaint for declaratory relief challenging the Legislature's delegation of authority in NRS 176.355. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

Rene L. Valladares, Federal Public Defender, and Jocelyn S. Murphy, David Anthony, and Bradley D. Levenson, Assistant Federal Public Defenders, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Steven G. Shevorski, Chief Litigation Counsel, and Jeffrey M. Conner, Deputy Solicitor General, Carson City,
for Respondents.

_____

BEFORE THE SUPREME COURT, EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

23-31803

*OPINION*

By the Court, PARRAGUIRRE, J.:

Nevada's Constitution provides for three coequal branches of government and expressly prohibits each branch of government from exercising powers belonging to another branch of government. Nev. Const. art. 3, § 1. Consistent with that separation of powers, Nevada's Legislature cannot delegate its lawmaking authority to another branch of government, such as the executive branch. This court has recognized that the Legislature does not impermissibly delegate its lawmaking authority so long as the Legislature establishes "'suitable' standards to govern the manner and circumstances under which an executive agency can exercise its delegated authority." *Nat'l Ass'n of Mut. Ins. Cos. v. State, Dep't of Bus. and Indus.*, 139 Nev., Adv. Op. 3, 524 P.3d 470, 484 (2023) (quoting *Sheriff v. Luqman*, 101 Nev. 149, 153, 697 P.2d 107, 110 (1985)).

Appellant Zane Michael Floyd is a death-row inmate who contends that NRS 176.355—Nevada's statute providing that an execution must be effectuated by "injection of a lethal drug"--unconstitutionally delegates lawmaking authority to respondents, the Nevada Department of Corrections and its Director, James Dzurenda (collectively, the Director). Although NRS 176.355 provides that the method of execution must be by lethal injection, Floyd contends that the statute is unconstitutional because it gives the Director discretion to determine the process by which a lethal injection is administered.

We disagree with Floyd and conclude that NRS 176.355, combined with the U.S. Constitution's Eighth Amendment prohibition on cruel and unusual punishment, provides the Director with suitable standards to determine the process by which a lethal injection is to be

administered. We therefore affirm the district court's order dismissing Floyd's declaratory relief action.

## FACTS AND PROCEDURAL HISTORY

In the early 2000s, Floyd was convicted by a jury and sentenced to death for killing four people in 1999. *See generally Floyd v. State*, 118 Nev. 156, 42 P.3d 249 (2002) (recounting the circumstances of the murders and affirming the jury's imposition of the death penalty). Throughout the next roughly two decades, Floyd's collateral challenges to his convictions and death sentences were unsuccessful. Consequently, in April 2021, the Clark County District Attorney began the process of obtaining an order of execution and warrant to carry out Floyd's death sentence.

In response, Floyd filed the underlying action against the Director.[1] Therein, he sought a declaration that NRS 176.355 violates the separation-of-powers clause and cannot be enforced. More specifically, Floyd sought a declaration that NRS 176.355 unconstitutionally delegates to the Director the legislative authority to determine how a lethal injection should be administered.

The Director moved to dismiss Floyd's complaint. In the motion, the Director argued generally that NRS 176.355 provides "suitable standards" for the Director in carrying out a death sentence. *Luqman*, 101 Nev. at 153, 697 P.2d at 110. The district court entered a written order granting the Director's motion to dismiss, reasoning that NRS 176.355, combined with the Eighth Amendment's prohibition on cruel and unusual punishment, provides the Director with suitable standards to determine the

_____

[1]Floyd also sued NDOC's Chief Medical Officer, Ihsan Azzam. Dr. Azzam filed a motion to dismiss, which the district court granted, and Dr. Azzam is not a party to this appeal.

process by which a lethal injection is to be administered. This appeal followed.

## DISCUSSION

Floyd's constitutional challenge to NRS 176.355 presents a question of law that we review de novo. *State v. Second Judicial Dist. Court (Hearn)*, 134 Nev. 783, 786, 432 P.3d 154, 158 (2018) (observing that "the constitutionality of a statute," including whether a statute violates the separation-of-power doctrine, is a "question of law, which this court reviews de novo" (internal quotation marks omitted)). We presume the statute is valid and hold the challenger to the burden of showing that it is not. *Taylor v. Colon*, 136 Nev. 434, 436, 482 P.3d 1212, 1215 (2020) ("[S]tatutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional." (quoting *Tam v. Eighth Judicial Dist. Court*, 131 Nev. 792, 796, 358 P.3d 234, 237-38 (2015))); *see also McNeill v. State*, 132 Nev. 551, 556, 375 P.3d 1022, 1025 (2016) ("Because we presume that the Legislature is aware that it may not delegate the power to legislate pursuant to the separation of powers, we presume that it acted in accordance.").

The Nevada Constitution divides the powers of state government into "three separate departments"—the legislative, executive, and judicial departments—and provides that "no persons charged with the exercise of powers properly belonging to one of those departments shall exercise any functions, appertaining to either of the others." Nev. Const. art. 3, § 1. The question at issue is whether the Legislature unconstitutionally delegated its lawmaking authority to an executive

branch official, the Director. Our decision in *Luqman* provides the general framework for answering that question.[2]

In *Luqman*, we considered an amendment to the Uniform Controlled Substances Act (UCSA) that delegated authority to an executive branch agency, the State Board of Pharmacy, to categorize drugs into various "schedules." Two defendants charged with illegal possession of certain drugs argued that because the scheduling of drugs determined the penalty they faced, the amendment impermissibly delegated lawmaking authority to the Pharmacy Board. 101 Nev. at 152-53, 697 P.2d at 109-10. In rejecting that argument, we observed that "[a]lthough the legislature may not delegate its power to legislate, it may delegate the power to determine the facts or state of things upon which the law makes its own operations depend." *Id.* at 153, 697 P.2d at 110. From that premise, we reasoned that "the legislature can make the application or operation of a statute complete within itself dependent upon the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency." *Id.* In other words, if "the legislature vests the agency with mere fact finding authority," the Legislature has not delegated its lawmaking authority. *Id.* We determined that so long as legislation provides the agency with "suitable standards," meaning those that are "sufficient to guide the agency with respect to the purpose of the law and the power authorized," the Legislature has not delegated its lawmaking authority. *Id.*

_____

[2]In his reply brief, Floyd relies on *McNeill v. State,* 132 Nev. 551, 375 P.3d 1022 (2016). We are not convinced that *McNeill* is relevant. Our decision in that case primarily addressed whether an administrative agency had exceeded its statutory grant of authority in enacting a regulation, not whether the Legislature had improperly delegated lawmaking authority to the agency. *Id.* at 555-57, 375 P.3d at 1025-26.

at 153-54, 697 P.2d at 110. Applying that test, we determined that the amendment to the UCSA was constitutional because the Legislature provided the Pharmacy Board with "specific guidelines listing various factors which are to be taken into account . . . when scheduling drugs as well as delineating the requirements by which a drug is classified in an appropriate schedule." *Id.* at 154, 697 P.2d at 110.

The statute challenged in this case specifies the manner in which the Director must carry out a death sentence—"by an injection of a lethal drug"—and authorizes the Director to determine which drug or combination of drugs to use after consulting with NDOC's Chief Medical Officer. NRS 176.355(1), (2)(b). In its entirety, the statute provides as follows:

> 1. The judgment of death *must be inflicted by an injection of a lethal drug.*
>
> 2. *The Director of the Department of Corrections shall*:
>
> (a) Execute a sentence of death within the week, the first day being Monday and the last day being Sunday, that the judgment is to be executed, as designated by the district court. The Director may execute the judgment at any time during that week if a stay of execution is not entered by a court of appropriate jurisdiction.
>
> (b) *Select the drug or combination of drugs to be used for the execution after consulting with the Chief Medical Officer.*
>
> (c) Be present at the execution.
>
> (d) Notify those members of the immediate family of the victim who have, pursuant to NRS 176.357, requested to be informed of the time, date and place scheduled for the execution.
>
> (e) Invite a competent physician, the county coroner, a psychiatrist and not less than six

SUPREME COURT
OF
NEVADA

(O) 1947A

6

reputable citizens over the age of 21 years to be present at the execution. The Director shall determine the maximum number of persons who may be present for the execution. The Director shall give preference to those eligible members or representatives of the immediate family of the victim who requested, pursuant to NRS 176.357, to attend the execution.

      3. The execution must take place at the state prison.

      4. A person who has not been invited by the Director may not witness the execution.

NRS 176.355 (emphases added).

Floyd contends that NRS 176.355 lacks suitable standards because, aside from declaring that an execution must be "inflicted by injection of a lethal drug," it affords the Director complete discretion to determine the types, dosages, and sequencing of drugs to be used in the execution. According to Floyd, "a statute that does nothing more than state a means of execution does not provide suitable and sufficient standards" for the Director to implement the lethal-injection process.[3]

We are not persuaded by Floyd's argument. Most significantly, NRS 176.355 must be read in context with NRS 200.030, which authorizes the imposition of the death penalty and lists the crimes for which execution is the appropriate punishment. In these statutes, the Legislature has

---

[3]Floyd identifies ten concerns with NRS 176.355, many of which are redundant and some of which have only marginal relevance. We have considered all of them in deciding this case. Relatedly, Floyd suggests that the Chief Medical Officer may simply refuse to consult with the Director, thereby leaving the Director with unfettered and uninformed discretion regarding how to administer a lethal injection. We find this suggestion implausible. In this, we note that Floyd's record citations do not establish a factual basis for that argument.

 

identified the types of crimes that are punishable by death and determined the manner of execution—injection of a lethal drug—thereby exercising its exclusive authority to define crimes and penalties. *See Lapinski v. State*, 84 Nev. 611, 613, 446 P.2d 645, 648 (1968) ("The power to define crimes and penalties lies exclusively in the legislature."). By specifying the manner of execution, the Legislature has given the Director clear guidance with respect to the delegated authority to determine the execution protocol.

Moreover, the Director's discretion in choosing the drug or combination of drugs is not unguided; rather, the Director must make those decisions "after consulting with the Chief Medical Officer." NRS 176.355(2)(b). The Chief Medical Officer is appointed by the Director of the Nevada Department of Health and Human Services, NRS 439.085, and must be a licensed physician or administrative physician, eligible for a license as a physician or administrative physician, or a physician or administrative physician who has a master's degree or doctoral degree in public health or a related field, NRS 439.095(3). Among other duties, the Chief Medical Officer is responsible for "[e]nforc[ing] all laws and regulations pertaining to the public health." NRS 439.130(1)(a). By requiring consultation with the Chief Medical Officer, the Legislature has ensured the Director will ascertain facts and conditions relevant to making operation of the death penalty statute complete. This fits within the "fact finding" that *Luqman* recognized may be appropriately delegated.

In addition to the statutory guidance, the Eighth Amendment's prohibition on cruel and unusual punishment further guides and limits the Director's discretion. *See Cook v. State*, 281 P.3d 1053, 1056 (Ariz. Ct. App. 2012) (pointing to the Cruel and Unusual Punishment Clause as an implicit guide and limit on the Department of Corrections' discretion in developing

a lethal injection protocol); *cf. State v. Gee Jon*, 46 Nev. 418, 437, 211 P. 676, 682 (1923) ("We must presume that the officials [e]ntrusted with the infliction of the death penalty . . . will carefully avoid inflicting cruel punishment."). Specifically, to comply with the Eighth Amendment, the protocol approved by the Director must avoid inflicting severe pain. *See Glossip v. Gross*, 576 U.S. 863, 882 (2015) ("[A]n inmate challenging a protocol bears the burden to show, based on evidence presented to the court, that there is a substantial risk of severe pain.").

We are not alone in rejecting a separation-of-powers challenge to a statute addressing the manner of carrying out a death sentence. Several other courts have rejected similar separation-of-powers challenges.[4] *See, e.g., Zink v. Lombardi*, No. 2:12-CV-4209-NKL, 2012 WL 12828155, at *8 (W.D. Mo. Nov. 16, 2012); *Cook*, 281 P.3d at 1056; *Sims v. Kernan*, 241 Cal. Rptr. 3d 300, 309 (Ct. App. 2018); *Sims v. State*, 754 So. 2d 657, 669-70 (Fla. 2000); *State v. Osborn*, 631 P.2d 187, 201 (Idaho 1981); *State v. Ellis*, 799 N.W.2d 267, 289-90 (Neb. 2011); *O'Neal v. State*, 146 N.E.3d 605, 621 (Ohio Ct. App. 2020); *State v. Hawkins*, 519 S.W.3d 1, 55, 60-61 (Tenn. 2017); *Ex parte Granviel*, 561 S.W.2d 503, 514-15 (Tex. Crim. App. 1978); *Brown v. Vail*, 237 P.3d 263, 270 (Wash. 2010). At least four of these courts have based their analyses in part on pragmatic considerations, namely, that an administrative agency is often better-equipped than a legislature to deal with the granular details of formulating an execution protocol. *See, e.g., Ex parte Granviel*, 561 S.W.2d at 514 ("When the Legislature itself cannot

---

[4]While Floyd urges us to disregard these decisions and instead follow the Arkansas Supreme Court's analysis in *Hobbs v. Jones*, 412 S.W.3d 844 (Ark. 2012), we are not persuaded that our suitable-standards test requires the Legislature to provide the level of specificity that the *Hobbs* court deemed necessary under Arkansas law.

practically or efficiently perform the functions required, it has the authority to designate some agency to carry out the purposes of such legislation . . . ."); *see also Zink*, 2012 WL 12828155, at *8 (observing that it is "impracticable" for a legislature to provide details in legislation when "the relations to be regulated are highly technical or where the regulation requires a course of continuous decision" and that, in such instances, "the agency official is better qualified to make the policy" regarding certain details (internal quotation marks omitted)); *Cook*, 281 P.3d at 1056 (observing that the Arizona Department of Corrections' execution protocol is 35 pages long and that it would be "impracticable for the Legislature to supply the details of the execution process itself"); *Ellis*, 799 N.W.2d at 289 (recognizing that the nondelegation doctrine "permit[s] delegation of details that the legislature cannot practically or efficiently perform itself").[5]

We share these pragmatic concerns, particularly given that our Legislature convenes for only 120 days every other year. *See* Nev. Const. art. 4, § 2. An execution protocol must take into account ever-changing resources, such as personnel, facilities, and drugs, and coordinate a complex procedure. *See generally Glossip*, 576 U.S. at 869-71 (discussing "obstacle[s]" to lethal injection protocols presented by the changing availability of drugs used to carry out death sentences); *Cook*, 281 P.3d at 1056 (discussing the kind of details covered in an execution protocol). Having determined which offenses may carry the penalty of death and specified the manner in which a death sentence must be inflicted, it was

---

[5]At oral argument, Floyd suggested for the first time that these states' nondelegation tests are less stringent than *Luqman*. We do not perceive any substantive difference between our suitable-standards test and those states' analogous tests.

within the Legislature's authority to delegate the details of implementing the death penalty to the Director, who is in a better position to consider all relevant facts and ensure that the death penalty is implemented consistent with legislative directive and the Eighth Amendment.

## CONCLUSION

In sum, we conclude that the Legislature has provided suitable standards and safeguards to guide the Director in exercising the authority delegated in NRS 176.355. We therefore affirm the district court's order dismissing Floyd's complaint.

_____, J.
Parraguirre

We concur:

_____, C.J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A

11