**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE CARMEN GOMEZ FERNANDEZ, AKA Jobe Carmen Gomez, AKA Jose Carmen Gomez, AKA Jose Gomez Carmen, *Petitioner*, | No. 19-70079 Agency No. A070-640-213 |
| v. | OPINION |
| WILLIAM P. BARR, Attorney General, *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 11, 2020
San Francisco, California

Filed August 13, 2020

Before: MILAN D. SMITH, JR. and ANDREW D.
HURWITZ, Circuit Judges, and DAVID A. EZRA,[*]
District Judge.

Opinion by Judge Milan D. Smith Jr.

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

**SUMMARY**[**]

**Immigration**

Denying Jose Gomez Fernandez's petition for review of a decision of the Board of Immigration Appeals, the panel held that: 1) a murder conviction under California Penal Code § 187(a) is broader than the generic definition of murder in the aggravated felony provision of the Immigration and Nationality Act because the California statute includes the killing of a fetus; 2) § 187(a) is nonetheless divisible; 3) under the modified categorical approach, Gomez's § 187(a) conviction is an aggravated felony; and 4) substantial evidence supported the denial of deferral of removal under the Convention Against Torture (CAT).

Gomez, a native and citizen of Mexico, became a lawful permanent resident, but was later ordered removed on the ground that his conviction for second degree murder in violation of § 187(a) is an aggravated felony.

Employing the categorical approach, the panel first compared § 187(a) to the generic offense of "murder" used in the relevant aggravated felony provision, 8 U.S.C. § 1101(a)(43)(A). Although Congress did not define "murder" in that provision, the panel noted that the parties agreed that the foundation for ascertaining the federal generic definition was the federal murder statute, 18 U.S.C. § 1111, which provides in relevant part that murder is the "unlawful killing of a human being with malice

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

aforethought." Further, the panel explained that Congress has defined the term "human being," in 1 U.S.C. § 8(a), for purposes of determining the meaning of any Act of Congress, to "include every infant member of the species homo sapiens who is born alive at any stage of development." Looking, in turn, to the definition of "born alive" in 1 U.S.C. § 8(b), the panel concluded that the term "human being" does not include a fetus. Thus, the panel held that the federal generic definition of murder excludes the killing of an unborn fetus.

The panel rejected the Government's reliance on 18 U.S.C. § 1841, the federal unborn child protection statute, to reason that the federal generic definition of murder includes the killing of an unborn fetus. Considering § 1841's plain language, purpose, and structure, the panel agreed with the Eighth Circuit that § 1841 has no applicability or reach beyond its own provisions.

Comparing § 187(a) to the federal generic definition, the panel concluded that § 187(a) is broader because it includes the killing of an unborn fetus. However, the panel concluded that § 187(a) is divisible because it creates distinct crimes for the unlawful killing of a human being and the unlawful killing of a fetus. In so concluding, the panel examined the text of the statute, the *Shepard* documents in this case, state court decisions, and the California model jury instructions.

Applying the modified categorical approach, the panel concluded that Gomez's conviction met the federal generic definition of murder. The panel explained that the judgment against Gomez convicting him of "Count 1A" for the violation of § 187(a) clearly was linked with Count One of the indictment, which charged him with unlawfully killing "a human being" in violation of § 187(a). Accordingly, the

panel concluded that Gomez's conviction is an aggravated felony that rendered him removable.

The panel also concluded that substantial evidence supported the BIA's decision affirming the denial of CAT deferral. The panel explained that Gomez presented no evidence of past torture and that he relied primarily on evidence of harm to his family members in 1996, but also testified that 1997 was the last time he had heard that the group that threatened his family was looking for his sister. Noting that Gomez indicated his brother had gone into hiding, the panel observed that he had also explained that his brother continued to live in Mexico unharmed. The panel further concluded that Gomez's speculation that the people who targeted his family in 1996 would target him now was insufficient to meet his burden.

## COUNSEL

Robert G. Berke (argued), Berke Law Offices Inc., Canoga Park, California, for Petitioner.

Bernard A. Joseph (argued), Senior Litigation Counsel; Derek C. Julius, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

M. SMITH, Circuit Judge:

Shortly after Jose Gomez Fernandez, a native and citizen of Mexico, became a lawful permanent resident, a jury convicted him of second degree murder in violation of California Penal Code § 187(a). The Department of Homeland Security (DHS) charged Gomez with being removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(A). An immigration judge (IJ) and the Board of Immigration Appeals (BIA) agreed and denied Gomez's request for deferral of removal pursuant to the Convention Against Torture (CAT). Gomez petitions for our review.

California law defines "murder" as "the unlawful killing of a human being, *or a fetus*, with malice aforethought." Cal. Penal Code § 187(a) (emphasis added).[1] The principal issue that the petition raises is whether a § 187(a) conviction is broader than the federal generic definition of murder in the aggravated felony provision of the Immigration and Nationality Act (INA) because it includes the killing of a fetus, and, if so, whether § 187(a) is divisible. We are aware of the sensitive nature that this issue raises. Our limited role, however, is to apply the Supreme Court's method for determining whether an offense qualifies as an aggravated felony under the INA.

---

[1] Second degree murder is "all other kinds of murders" other than those identified in California Penal Code § 189(a). Cal. Penal Code § 189(b). Because this provision is not otherwise relevant to the analysis, we do not discuss it further.

Doing so here, we hold that the federal generic definition of murder is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Because federal law defines the term "human being" to exclude an unborn fetus, 1 U.S.C. § 8, California Penal Code § 187(a), which criminalizes the unlawful killing of an unborn fetus, is broader than the federal generic definition. However, we also hold that § 187(a) is divisible because it creates distinct crimes for the unlawful killing of a human being and the unlawful killing of a fetus. Gomez's § 187 conviction for the unlawful killing of a human being renders him removable as charged. Finally, we conclude that substantial evidence supports the denial of CAT deferral. Thus, we deny the petition.

## BACKGROUND

Gomez became a lawful permanent resident in 2000. Three years later, a jury convicted him of second degree murder in violation of § 187(a), and he was sentenced to fifteen years to life in prison with the possibility of parole.

In December 2017, DHS charged Gomez as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(A). Gomez averred that he was not removable as charged because (1) § 187(a), by criminalizing the killing of a fetus, is broader than the federal generic definition of murder under the INA and (2) § 187(a) is indivisible.[2] Gomez also sought withholding of removal and CAT relief, claiming a fear of returning to Mexico.

---

[2] Before the IJ, Gomez contested that he had a § 187(a) conviction and the duration of his sentence. He disavows those arguments here.

The IJ concluded that Gomez was removable as charged. First, he concluded that Gomez had failed to show that § 187(a) is broader than the federal generic definition of murder. The IJ recognized that in *Matter of M–W–*, 25 I. & N. Dec. 748, 752, 758 (B.I.A. 2002), the BIA had construed the INA's generic definition of murder to mean the killing of a human being with malice aforethought. But the IJ reasoned that the federal generic definition "implicitly includes murder of 'a fetus.'" The IJ observed that 18 U.S.C. § 1841—a federal statute that criminalizes certain conduct that causes the death of or great bodily injury to an unborn child—imposes the same punishments that apply to the federal murder statute, 18 U.S.C. § 1111, when the offense involves the intentional killing of or intentional attempt to kill a fetus. 18 U.SC. § 1841(a)(2)(C). The IJ further reasoned that "[a] significant majority of states also protect fetal life in murder statutes[.]"

Alternatively, the IJ assumed that § 187(a)'s inclusion of the killing of a fetus rendered it overbroad. The IJ concluded that § 187(a) is divisible because it creates different crimes for the killing of a human being and of a fetus. The IJ then determined that Gomez's conviction satisfies the federal generic definition because he was charged with killing a "human being." The IJ concluded that Gomez was ineligible for asylum and withholding of removal for being convicted of a particularly serious crime. The IJ denied CAT deferral because Gomez had not shown that he would be tortured in Mexico.

The BIA adopted and affirmed the IJ's decision. Gomez timely petitioned for our review.

## JURISDICTION AND STANDARD OF REVIEW

When an alien is found removable for having a conviction that is an aggravated felony under the INA, our jurisdiction is limited to review of constitutional questions and questions of law.   8 U.S.C. § 1252(a)(2)(C), (D). Whether a crime is as an aggravated felony under the INA is a question of law subject to de novo review.  *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1118 (9th Cir. 2020).

## ANALYSIS

### I.   Gomez's § 187(a) Conviction Is as an Aggravated Felony under the INA

We must decide first whether a § 187(a) offense falls within the generic offense of "murder" as used in the INA's aggravated felony provision, 8 U.S.C. § 1101(a)(43)(A), thus rendering Gomez removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).   Although we have previously considered whether a California second degree murder conviction pursuant to an aider and abettor theory is an aggravated felony under the INA, there was no dispute that a California conviction for second degree murder is an aggravated felony under federal law.  *Sales v. Session*, 868 F.3d 779, 780 (9th Cir. 2017).  Gomez, however, raises that dispute.  He contends that a § 187 conviction is not an aggravated felony under the INA because it includes the killing of a fetus.  Neither we, nor any of our sister circuits has addressed in a precedential decision whether the federal generic definition of murder in the INA's aggravated felony provision includes the killing of a fetus.[3]   The sensitive

---

[3] Our court has considered this issue in an unpublished disposition. *Bent v. Barr*, 775 F. App'x 281 (9th Cir. 2019).  The petition concerned

nature of this issue may explain the dearth of any precedent on it.  In addressing the issue here, we first describe the framework that guides our analysis.

## A.  The Framework

We use the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005) to determine whether a state conviction is an aggravated felony under the INA.  *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1146 (9th Cir. 2020).

Pursuant to the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood."  *Descamps v. United States*, 570 U.S. 254, 257 (2013).  A state offense with the same or narrower elements as the generic offense defined by federal law is a categorical match.  *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015).  However, "[a] state statute is overbroad if there is a realistic probability of its application to conduct that falls beyond the scope of the generic federal offense."  *Jauregui-Cardenas*, 946 F.3d at 1119 (citation and internal quotation marks omitted).

---

whether attempted murder under California law is broader than the generic definition of attempted murder in § 1101(a)(43)(A).  We remanded so that the BIA could consider in the first instance "whether generic INA murder encompasses feticide" and thus "whether 'murder' as used in that provision categorically includes the unlawful killing of a fetus as prohibited by California."  *Id.* at 283.  On remand, the BIA determined that § 187(a) is broader than generic murder under the INA.  *See Bent v. Barr*, No. 19-cv-06123-DMR, 2020 WL 1677332, at *1 (N.D. Cal. Apr. 6, 2020).

If the statute of conviction is overbroad, we determine whether the statute is divisible. *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014). A statute is divisible if it has "multiple, alternative elements, and so effectively creates several different crimes." *Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2016) (en banc) (citation and internal quotation marks omitted). If an offense has an indivisible set of elements with different means of committing one crime, it is indivisible, and our inquiry ends. *Id.*

If the statute is divisible, we apply the modified categorical approach and "examine judicially noticeable documents of conviction 'to determine which statutory phrase was the basis for the conviction.'" *United States v. Martinez-Lopez*, 864 F.3d 1034, 1039 (9th Cir. 2017) (en banc) (quoting *Descamps*, 570 U.S. at 268). These documents include "'the charging document, the terms of a plea agreement,' the 'transcript of [the plea] colloquy,' and 'comparable judicial record[s],'" such as the judgment. *Marinelarena v. Barr*, 930 F.3d 1039, 1045–46 (9th Cir. 2019) (en banc) (quoting *Shepard*, 544 U.S. at 26). If the defendant's conviction satisfies the federal definition in light of such documents, it is an aggravated felony under the INA.

In accordance with this framework, we first ascertain the federal generic definition of "murder" and then compare § 187(a) with that definition.

## B. The Federal Generic Definition of "Murder" Under the INA

When Congress added the aggravated felony provision to the INA in 1988, "murder" was one of the few offenses included in that provision. Anti-Drug Abuse Act (ADAA) of 1988, Pub. L. 100-690, §§ 7342, 7344, 102 Stat. 4469,

4470; *see also Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1063–64 & n.5 (9th Cir. 2010) (discussing the ADAA amendments to the INA). Congress did not define the term "murder." 8 U.S.C. § 1101(a)(43)(A). The parties agree, however, that the foundation for ascertaining the federal generic definition of murder is the federal murder statute, 18 U.S.C. § 1111.[4]

### 1.  The Federal Murder Statute: 18 U.S.C. § 1111

The federal murder statute, 18 U.S.C. § 1111, provides in relevant part that "[m]urder is the unlawful killing of *a human being* with malice aforethought." 18 U.S.C. § 1111(a) (emphasis added). We may rely on a congressionally supplied federal definition of an offense at the time that Congress added the offense to the INA's aggravated felony provision to ascertain the federal generic definition of the offense. *See Rodriguez-Valencia v. Holder*, 652 F.3d 1157, 1159 (9th Cir. 2011) (looking to federal criminal offenses in existence at the time that Congress added an offense to the INA's aggravated felony provision).

The absence of a cross-reference to § 1111 in the INA's aggravated felony provision does not undercut its relevance. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017) (looking to federal criminal offense that the INA did not cross-reference as evidence of the federal generic

---

[4] We may ascertain the generic meaning of an undefined offense in the INA by surveying "the definitions in state and federal [criminal] statutes, adopted by the Model Penal Code ('MPC'), and endorsed by scholarly commentary." *United States v. Garcia-Santa*, 774 F.3d 528, 534 (9th Cir. 2014). The Government, however, has failed to raise and has therefore waived any arguments concerning the MPC, state criminal statutes, or scholarly commentary. *Aguilar-Turcios v. Holder*, 740 F.3d 1294, 1302 n.11 (9th Cir. 2012).

definition of the offense).  We have previously explained that the terms in § 1101(43)(A) "that refer to a broad category of offenses, using a potentially ambiguous phrase, reference other statutory provisions for clarification[,] [but] those that refer to a specific crime which is already clearly defined in criminal law have no need for a cross-reference." *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1155 (9th Cir. 2008) (en banc), *overruled in part and abrogated on other grounds as recognized by United States v. Rivera-Constantino*, 798 F.3d 900, 904 (9th Cir. 2015).  "[M]urder" "needs no cross-reference" because it "denotes a clearly defined criminal offense."  *Id.* at 1156.

Reliance on § 1111 to ascertain the federal generic definition of murder does not break new ground.  The Second Circuit has relied solely on § 1111 as the federal generic definition of murder.  *Santana-Felix v. Barr*, 924 F.3d 51, 56 (2d Cir. 2019) (concluding that "second-degree murder is clearly an aggravated felony within the federal definition" in § 1101(a)(43)(A) because "under federal law, '[m]urder is the unlawful killing of a human being with malice aforethought,' 18 U.S.C. § 1111(a)").  The Second Circuit, however, did not address the meaning of the term "human being" in § 1111, a question that is critical to Gomez's petition.

Turning to that critical question, we need not guess about the meaning of the term "human being" in § 1111 because Congress has already defined it.  "In determining the meaning of *any* Act of Congress, . . . the word[] 'human being' . . . shall include every infant member of the species homo sapiens who is *born alive* at any stage of development."  1 U.S.C. § 8(a) (emphasis added).  The phrase "born alive" is defined, in relevant part, as "with respect to a member of the species homo sapiens, . . . the

complete expulsion or extraction from [the] mother of that member, at any stage of development, who after such expulsion or extraction breathes or has a beating heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, . . . ." *Id.* § 8(b). The term "human being" thus does not include a fetus. *See United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011) (concluding that "[u]nder a literal reading of [1 U.S.C. § 8], the term 'person' does not include fetuses"). Applying this federal definition of the term "human being" readily leads to the conclusion that the federal generic definition of murder, as reflected in § 1111, excludes the killing of an unborn fetus.**[5]**

### 2. The Federal Unborn Child Protection Statute: 18 U.S.C. § 1841

Although the IJ and the BIA both recognized that § 1111 is the federal statute defining murder, they relied on 18 U.S.C. § 1841, the federal unborn child protection statute, to reason that the federal generic definition of murder includes the killing of an unborn fetus. The Government also relies on § 1841 to argue that the federal generic definition of murder includes an unborn fetus. Considering § 1841's plain language, purpose, and structure, *see United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015), we agree with the Eighth Circuit that § 1841 "has no applicability or

---

**[5]** This understanding of § 1111 coincides with our decision in *United States v. Spencer*, 839 F.2d 1341 (9th Cir. 1988), decided the same year that Congress adopted the INA's aggravated felony provision and prior to the adoption of a federal definition of the term "human being." We held that a § 1111 murder offense reached death caused by prenatal injuries only "if the baby is born alive." *Id.* at 1344.

reach beyond its own provisions," *United States v. Flute*, 929 F.3d 584, 589 (8th Cir. 2019).

Congress enacted § 1841 in 2004 as part of the Unborn Victims of Violence Act. *Montgomery*, 635 F.3d at 1086. As is relevant here, § 1841 provides that:

> If the person engaging in the conduct thereby intentionally kills or attempts to kill the unborn child, that person shall instead of being punished under subparagraph (A), be punished as provided under sections 1111, 1112, and 1113 of this title for intentionally killing or attempting to kill a human being.

18 U.S.C. § 1841(a)(2)(C). This provision plainly punishes the killing of an unborn child the same as the killing of a human being under § 1111.

By its terms, however, § 1841 defines a separate criminal offense: "[w]hoever engages in conduct that violates any of the provisions of law listed in subsection (b) and thereby causes the death of, or bodily injury . . . to, a child, who is in utero at the time the conduct takes place, *is guilty of a separate offense under this section*." 18 U.S.C. § 1841(a)(1) (emphasis added).[6] In creating this separate offense, Congress conspicuously did not use the term "murder," as it has in other criminal provisions and the INA's aggravated felony provision. *See* 18 U.S.C § 1116 ("[m]urder or manslaughter of foreign officials, official guests, or

_____

[6] Congress placed limits on prosecution pursuant to § 1841(a). One may not prosecute any person for conduct relating to a consented abortion, any person for any medical treatment of the pregnant women or her unborn child, or of any woman with respect to her unborn child. 18 U.S.C. § 1841(c)(1)–(3).

internationally protected persons"); *id.* § 1118 ("[m]urder by a federal prisoner"); *id.* § 1119 ("[foreign murder of United States nationals"); *id.* § 1120 ("[m]urder by escaped prisoners"); *see also* 8 U.S.C. § 1101(a)(43)(A). Section 1841 therefore does not transform the offense of killing an unborn child into a violation of the federal murder statute.

## C. Comparison of § 187(a) with the Federal Generic Definition

It is readily apparent that § 187(a) is broader than the federal generic definition of murder under the INA. Section 187(a) provides that "[m]urder is the unlawful killing of a human being, or a fetus, with malice aforethought." Cal. Penal Code § 187(a). "Under the Penal Code, as was true under common law, a fetus is not a 'human being' within section 187's definition of murder as 'the unlawful killing of a human being[.]" *People v. Dennis*, 950 P.2d 1035, 1055 (Cal. 1998). Instead, the term "fetus" means an "*unborn* offspring" that has "progressed beyond the embryonic stage of seven to eight weeks."[7] *People v. Davis*, 872 P.2d 591, 599–600, 602 (Cal. 1994) (emphasis added). Because § 187(a) includes the killing of an unborn fetus, it is broader than the federal generic definition and we turn to divisibility.

## D. Section 187(a) is Divisible

A statute is divisible if it "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. Because we owe no deference to the IJ's and BIA's conclusion that § 187(a) is divisible, we must decide the

---

[7] The California model jury instructions also define "fetus" as "an unborn offspring in the post embryonic period, after major structures have been outlined. This period occurs in humans seven or eight weeks after fertilization." CALJIC 8.10 (West 2019); CALCRIM 520.

issue ourselves. *Almanza-Arenas*, 815 F.3d at 477. We follow a three-step process. First, we examine the statute to determine whether its text sets forth multiple crimes with distinct elements or, instead, sets forth alternative means to accomplish a single crime. *Rivera v. Lynch*, 816 F.3d 1064, 1078 (9th Cir. 2016). "Second, we confirm our reading of the statute by looking to the conviction documents. Finally, we consider how state courts have construed the statute of conviction." *Id.*

Gomez argues that the statute is not divisible because neither it, nor the jury instructions require jury unanimity about whether the killing involved a human being or a fetus. He avers that "murder of a human being or murder of a fetus is the same crime." We disagree.

By its text, § 187(a) defines "murder" disjunctively as "the unlawful killing of a human being, *or* fetus, with malice aforethought." Cal. Penal Code § 187(a) (emphasis added). Although this disjunctive text "alone cannot end the divisibility inquiry," *Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014), it suggests that "human being" and "fetus" are alternative elements. *Descamps*, 570 U.S. at 257 (providing as an example of alternative elements a statute that says, "burglary involves entry into a building *or* an automobile" (emphasis in original)). Section 187(b) also provides that "[t]his section shall not apply to any person who commits an act that results in the death of a fetus if any" of three circumstances apply. Cal. Penal Code § 187(b). These circumstances include compliance with California's Therapeutic Abortion Act; an act committed by certain medical personnel and performed due to medically or substantially certain death to the mother or the fetus; or an act solicited, aided, abetted, or consented to by the mother. *Id*. § 187(b)(1)–(3). None of these circumstances apply to

"a human being," showing that California law distinguishes the crime of killing of a fetus from the crime of killing of a human being.

We "confirm this statutory interpretation by . . . examining the *Shepard* documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime." *Diego v. Sessions*, 857 F.3d 1005, 1013 (9th Cir. 2017) (citation and internal quotation marks omitted). Count One of the indictment charged Gomez with unlawfully killing "a human being," and lacks any reference to the killing of a fetus. By referencing one term to the exclusion of the other, the indictment indicates that the statute contains a list of elements that concern a separate crime. *Descamps*, 570 U.S. at 272 ("A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives."); *Diego*, 857 F.3d at 1013.

We verify our interpretation by considering state court decisions. *Diego*, 857 F.3d at 1013. The conclusion that § 187(a) is divisible "finds further support in the fact that an individual cannot violate the statute's two offenses simultaneously." *Rivera*, 816 F.3d at 1079. California state court decisions confirm that one cannot simultaneously murder a "human being" and a "fetus" because "a fetus is not a 'human being' within section 187's definition of murder as 'the unlawful killing of a human being'[.]" *Dennis*, 950 P.2d at 1055; *People v. Valdez*, 23 Cal. Rptr. 3d 909, 912 (Ct. App. 2005) ("[A] fetus is not a human being within the meaning of the murder statute."). The crime involves the killing of a "human being" under § 187 only if the fetus is "born alive." *People v. Taylor*, 14 Cal. Rptr. 3d 550, 556 (Ct. App. 2004).

California state court decisions identify additional features that distinguish the two crimes.  For one, when the killing involves a fetus, the state must "show that the fetus progressed beyond the embryonic stage of seven to eight weeks." *Davis*, 872 P.2d at 602.  Additionally, the crime of killing a fetus has no lesser included offenses whereas the crime of killing a human being does. *See Dennis*, 950 P.2d at 1055 (noting "[t]here is no crime in California of manslaughter of a fetus," "but only the unlawful killing of a human being can constitute manslaughter"); *Valdez*, 23 Cal. Rptr. 3d at 912 n.1 (same).

The California model jury instructions are "persuasive authority," and they further confirm that § 187(a) is divisible. *See Martinez-Lopez*, 864 F.3d at 1041; *Ramirez v. Lynch*, 810 F.3d 1127, 1135 (9th Cir. 2016) (analyzing model jury instructions to confirm divisibility analysis).  The model jury instructions require selection of either "human being" or "fetus."  CALCRIM 520 ("[1A. The defendant committed an act that caused the death of (another person/ [or] a fetus);]"); CALJIC 8.10 (West 2019) ("Every person who unlawfully kills a [human being] [or] [fetus]. . ."); *see also Davis*, 872 P.2d at 601 (discussing jury instructions for "fetal murder" and rejecting viability requirement).  Both sets of instructions define "fetus."  CALJIC 8.10 (West 2019); CALCRIM 520.  Furthermore, the use note to CALJIC 8.10 instructs that "if a fetus is not involved," one must delete from the instructions that "[a] human fetus was killed" and that "the killing was done with malice aforethought," thereby permitting the jury to find manslaughter.  CALJIC 8.10 (West 2019).  The model jury instructions confirm that the jury cannot take divergent views on the terms "human being" and "fetus." *See Lopez-Valencia*, 798 F.3d at 869 ("[A] statute is indivisible if 'the jury may disagree' on the fact at issue 'yet still convict.'").

Gomez errs in suggesting that § 187(a)'s use of the terms "human being" and "fetus" are akin to a statute that only requires a jury to find the existence of an indeterminate "weapon." *Descamps*, 570 U.S. at 273 (providing as an example of an indivisible statute one that requires "only an indeterminate 'weapon'" so the jury can disagree on whether it was a gun, knife, or tire iron). The statutory terms "human being" and "fetus" are distinct terms whose meaning does not overlap. Far from being irrelevant to a § 187 conviction, the applicability of one element instead of the other has consequences for what a prosecutor must charge and prove, the instructions the jury receives and what the jury must find, and the range of offenses to which a defendant may be subject. *See Lopez-Valencia*, 798 F.3d at 871 ("The categorical approach exists in large part to ensure that the imposition of a consequence in federal proceedings does not hinge on a fact that was irrelevant to a defendant's earlier conviction."). Thus, § 187(a) is divisible because it creates distinct crimes for the killing of a human being and the killing of an unborn fetus.

### E.  Gomez's § 187(a) Conviction Is an Aggravated Felony

Because § 187(a) is divisible, we apply the modified categorical approach and look to the conviction documents to determine whether Gomez's particular conviction meets the federal generic definition of murder. *Descamps*, 570 U.S. at 263–65. The only conviction documents in the record are the charging document and the abstract of judgment. Gomez did not argue in his opening brief that, if § 187(a) is divisible, his conviction does not satisfy the federal generic definition of murder. He has therefore waived that argument. *Diego*, 857 F.3d at 1015 n.4. Nonetheless, we have reviewed the conviction documents,

and conclude that the judgment against Gomez convicting him of "Count 1A" for the violation of § 187(a) clearly links with Count One of the indictment, which charged him with unlawfully killing "a human being" in violation of § 187(a).[8] Gomez's § 187(a) conviction is an aggravated felony, and he is removable as charged.

## II. Substantial Evidence Supports the BIA's Denial of CAT Deferral

Gonzalez also challenges the BIA's decision affirming the denial of CAT deferral. An applicant for CAT relief must show that it is more likely than not that he will be tortured if returned to his homeland. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (citation and quotation marks omitted). We review "for substantial evidence the factual findings underlying the . . . BIA's determination that [the applicant] was not eligible for deferral of removal under the CAT." *Arbid v. Holder*, 700 F.3d 379, 385–86 (9th Cir. 2012). "To reverse . . . . 'the evidence must compel a different conclusion from the one reached by the BIA.'" *Id.* (quoting *Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011)).

The undisputed evidence does not compel a different conclusion than that of the BIA. Although "past torture is ordinarily the principal factor on which we rely," *Nuru v. Gonzales*, 404 F.3d 1207, 1218 (9th Cir. 2005), Gomez

---

[8] During oral argument, Gomez's counsel speculated that there is an ambiguity about whether Gomez was convicted of Count One in the indictment because the judgment refers to a conviction for Count 1A. Gomez waived this issue by not raising it in his opening brief. *Diego*, 857 F.3d at 1015 n.4. In any event, the abstract of the judgment still shows that Gomez was convicted of the same underlying count with which he was charged, namely, Count One.

presented no such evidence and concedes that he "was not tortured himself." Although he relied primarily on evidence of harm that befell his sister, brother-in-law, and their children in 1996, Gomez testified that 1997 was the last time he had heard that the group was looking for his sister to get "more things."[9] Gomez provided no other evidence of any threats or harm against him or his family members. Although Gomez indicated that his brother had sold the family's home and gone into hiding, he explained that his brother continued to live in Mexico unharmed. Gomez's speculation that the same individuals who targeted his family members in 1996 would target him now if he returned is insufficient to meet his burden. *See Xiao Fei Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011) (concluding that the "speculative" claims of torture did not compel reversal). Thus, substantial evidence supports the denial of CAT relief.

## CONCLUSION

We conclude that the federal generic definition of murder in the INA's aggravated felony provision means the unlawful killing of a "human being," a term which federal law defines to exclude an unborn fetus. Section 187(a) is broader than that federal generic definition of murder because it includes an unborn fetus. Section 187(a) is divisible because it creates distinct crimes for the unlawful killing of a human being and the unlawful killing of a fetus. Looking to his conviction documents, we conclude that Gomez's § 187(a) second degree murder conviction for the unlawful killing of a human being is an aggravated felony

---

[9] Gomez does not challenge the BIA's determination that this evidence is too stale to meet his burden and has thus waived that argument. *Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011).

under the INA.  He is, therefore, removable as charged.  We affirm the BIA's denial of CAT deferral.

**PETITION FOR REVIEW DENIED.**