Filed 12/20/21  P. v. Ponce CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B311390 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA060571-01) |
| v. | |
| SERGIO PONCE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Michael Poole for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephen D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A person who pled guilty to a crime without understanding the negative immigration consequences of doing so may move the court under Penal Code section 1473.7, subdivision (a)(1), to withdraw that plea after release from custody.[1]  The moving party must demonstrate both contemporaneous ignorance of the adverse immigration consequences of the plea when made, and a reasonable probability that absent such ignorance, the party would not have pled guilty.  (*People v. Vivar* (2021) 11 Cal.5th 510, 529.)  The party must also demonstrate that the challenged conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."  (§ 1473.7, subd. (e)(1).)

In 2004, appellant Sergio Ponce pled guilty to one count of violating section 496, subdivision (a) (section 496(a)), for receiving stolen property.  He was sentenced to time served (12 days), three years of probation, and 40 days of community service.  In 2020, he moved to withdraw his guilty plea, arguing that his conviction constituted an aggravated felony under the Immigration and Nationality Act and would therefore negatively affect his ability to be naturalized, which he had not understood when pleading guilty.  The superior court denied the motion, not deciding whether his conviction constituted an aggravated felony, but

---

[1]      Undesignated statutory references are to the Penal Code.

finding that appellant was not entitled to relief because he had understood the immigration consequences of his guilty plea when he made it.

On appeal, appellant no longer contends his conviction constitutes an aggravated felony. Instead, he argues it is a crime involving moral turpitude, which would have the same negative immigration consequences. We find appellant has demonstrated neither the requisite negative immigration consequences from his guilty plea, nor his ignorance of any such potential consequences. We therefore affirm the superior court's order.

## STATEMENT OF RELEVANT FACTS

### A. *Underlying Crime*

A felony complaint was filed in 2004, alleging that appellant had violated section 496(a). Appellant was released on bail. At a plea hearing in which he expressed his intention to plead guilty, the prosecutor advised him: "[I]f you are not a citizen of the United States, your change of plea here today would result in your being deported, denied reentry into this country and denied naturalization. Do you understand that?" Appellant responded: "Yes." Appellant also confirmed no one had promised him "anything different than what we talked about here in open court . . . ." Appellant agreed he was changing his plea "freely and voluntarily" because he believed it was "in [his] best interest." He then pled guilty "to the charge in felony

3

complaint NA060571, in count 1, a violation of Penal Code section 496(a), receiving stolen property . . . ." The court found the plea to have been "knowingly, intelligently, [and] freely made with an understanding of the consequences." The court sentenced appellant to 12 days in jail (for which he received credit), three years of probation, and 40 days of community service. In 2006, the court agreed to deem the count a misdemeanor, and then dismissed it pursuant to section 1203.4.[2]

### B.    *Section 1473.7 Motion*

In April 2020, appellant moved to withdraw his guilty plea, arguing that his conviction under section 496(a) "constitutes an aggravated felony theft offense under section 101(a)(43)(G) of the [Immigration and Nationality] Act," and thus was grounds for "inadmissibility and removability." The motion further alleged that appellant "did not meaningfully understand the immigration consequences of

---

[2]    Section 1203.4, subd. (a)(1) provides: "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, . . . the defendant shall, at any time after the termination of the period of probation . . . be permitted by the court to withdraw his or her plea of guilty . . . and enter a plea of not guilty . . . and . . . the court shall thereupon dismiss the accusations or information against the defendant." However, "[f]or immigration purposes, a person continues to stand convicted of an offense notwithstanding a later expungement under a state's rehabilitative law." (*Ramirez-Castro v. I.N.S.* (9th Cir. 2002) 287 F.3d 1172, 1174.)

4

this plea and he did not defend against the serious immigration consequences because it wasn't until 2017, that the law was clarified that a conviction under Cal. Penal Code section 496 is an aggravated felony theft offense under section 101(a)(43)(G) of the Act . . . ." Appellant additionally filed a declaration attesting that if he had understood the immigration consequences of his plea, he "would not have entered into the plea bargain and would have sought to negotiate a different bargain that would not result in inadmissibility for immigration purposes." He claimed to be a permanent resident who "would like to apply for naturalization but this conviction will prevent that." The People opposed appellant's motion, arguing he had failed to show he was inadequately advised of the immigration consequences of his plea and that, in any case, the charge to which he pled guilty did not constitute an aggravated felony under federal immigration law. The court denied appellant's motion, declining to decide whether appellant's offense constituted an aggravated felony, but finding that appellant "meaningfully understood each of the rights he was giving up as well as the consequences . . . ." Appellant timely appealed.

## DISCUSSION

"A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully

5

understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar, supra,* 11 Cal.5th at 529; see also *People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*) ["to establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges"].) Additionally, when making a motion "pursuant to paragraph (1) of subdivision (a) [of section 1473.7], the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).)

Denials of section 1473.7 motions are reviewed independently. (*People v. Vivar*, *supra*, 11 Cal.5th at 527.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.'" (*Ibid.*) "Where, as here, the facts

derive entirely from written declarations and other documents, . . . '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id*. at 528.) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid*.) The moving party's burden of proof is a preponderance of the evidence. (§ 1473.7, subd. (e)(1).)

### A. *Appellant Fails to Establish His Conviction May Deny Him Immigration Benefits*

Below, appellant argued his conviction constituted "an aggravated felony offense under section 101(a)(43)(G) of the [Immigration and Nationality] Act," and thus was grounds for "inadmissibility and removability." On appeal, appellant no longer makes this argument, but instead contends that a "conviction for violating California Penal Code §496 may be considered to be a categorically a crime [*sic*] involving moral turpitude[] ('CIMT') for immigration purposes."[3] (Fn. omitted.) We disagree that appellant's conviction categorically constitutes a crime involving moral turpitude.

---

[3] As the People point out, an "'aggravated felony'" does include "a theft offense (including receipt of stolen property)" but only when "the term of imprisonment [is] at least one year." (8 U.S.C.S. § 1101, subd. (a)(43)(G).) Appellant's term of imprisonment was 12 days.

"[I]n determining whether a state crime of conviction constitutes a crime involving moral turpitude (CIMT), we apply the categorical approach . . . ." (*Hernandez-Gonzalez v. Holder* (9th Cir. 2015) 778 F.3d 793, 801.) "Pursuant to the categorical approach, we 'compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—i.e., the offense as commonly understood.' [Citation.] A state offense with the same or narrower elements as the generic offense defined by federal law is a categorical match. [Citation.] However, '[a] state statute is overbroad if there is a realistic probability of its application to conduct that falls beyond the scope of the generic federal offense.' [Citation.] [¶] If the statute of conviction is overbroad, we determine whether the statute is divisible. [Citation.] A statute is divisible if it has 'multiple, alternative elements, and so effectively creates several different crimes.' [Citation.] If an offense has an indivisible set of elements with different means of committing one crime, it is indivisible, and our inquiry ends. [Citation.] [¶] If the statute is divisible, we apply the modified categorical approach and 'examine judicially noticeable documents of conviction "to determine which statutory phrase was the basis for the conviction."' [Citation.]" (*Fernandez v. Barr* (9th Cir. 2020) 969 F.3d 1077, 1085-1086.)

In *Castillo-Cruz v. Holder* (9th Cir. 2009) 581 F.3d 1154, the Ninth Circuit noted that "a conviction for receipt of stolen property under § 496 is not categorically a crime of moral turpitude because it does not require an intent to

8

permanently deprive the owner of property." (*Id.* at 1161.) There is no need to continue to a "modified categorical approach" because section 496(a) is indivisible. The elements of the crime are "(1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property." (*People v. King* (2000) 81 Cal.App.4th 472, 476.) The statute lacks "'multiple, alternative elements'" that "'create[] several different crimes.'" (*Fernandez v. Barr*, *supra*, 969 F.3d at 1086; see also *United States v. Bahena* (C.D.Cal. 2017) 2017 U.S.Dist.LEXIS 142102, *16, *17 [ending inquiry into whether section 496(a) constituted an aggravated felony after concluding it was "both overbroad and indivisible"].) Because appellant's sole basis for contending that his section 496(a) conviction would have negative immigration consequences is that it may be deemed a crime involving moral turpitude, appellant has failed to establish that his conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).)

Appellant argues that *In re Diaz-Lizarraga* (2016) 26 I. & N. Dec. 847 "adopted a more expansive standard" for determining whether a theft offense constitutes a crime involving moral turpitude. There, the Board of Immigration Appeals (BIA) held that a theft crime was one of moral turpitude if it required "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." (*Id.* at

9

854.) Appellant implies that under this newly articulated standard, his 2004 conviction could deny him immigration benefits. We need not decide whether appellant is correct because the new standard does not apply to his conviction.

"Before *Diaz-Lizarraga*, the BIA's rule was that 'a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to permanently deprive an owner of property.' [Citations.] But in *Diaz-Lizarraga*, the BIA changed the threshold for theft offenses to qualify as CIMTs." (*Maie v. Garland* (9th Cir. 2021) 7 F.4th 841, 847.) When a person "pleaded no contest to the relevant charge before the BIA changed its interpretation, the new standard does not apply retroactively to his case." (*Barbosa v. Barr* (2019) 926 F.3d 1053, 1058.) Therefore, the new standard will not apply retroactively to appellant's 2004 conviction for receiving stolen property. Appellant cites no authority to the contrary.

### B. *Appellant Fails to Establish Ignorance of Any Adverse Immigration Consequences*

"[T]o establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges." (*Mejia, supra,* 36 Cal.App.5th at 862.)

10

On appeal, appellant claims he received the following advisement: "'If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'" He argues this was inadequate because "[d]efendants must be advised that they will be deported, excluded, and denied naturalization as a mandatory consequence of the conviction."  (See *People v. Patterson* (2017) 2 Cal.5th 885, 895-896 [warning that defendant's plea "'may' have adverse immigration consequences 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such'"].)  But appellant cites nothing to demonstrate that he received this advisement, and the record belies his claim.  Instead, the record demonstrates he was asked if he understood that "if you are not a citizen of the United States, your change of plea here today would result in your being deported, denied reentry into this country and denied naturalization." Appellant responded that he did.

Though appellant claimed in his declaration supporting the section 1473.7 motion that he did not "meaningfully understand that this conviction could cause inadmissibility years after my plea and become disastrous from an immigration law perspective," he proffered no explanation why we should disbelieve his contemporaneous affirmation that he understood his plea "would result" in

deportation, denial of reentry, and denial of naturalization if he was not a citizen. Similarly, while he averred that he "did not have a chance to investigate the adverse immigration consequences of my plea," he did not explain why he had no such chance; appellant was released on bail, and presumably had the opportunity to consult with an immigration attorney. On this record, we find that despite appellant's declaration, he failed to establish prejudicial error by a preponderance of the evidence, even assuming he faces actual or potential adverse immigration consequences. Accordingly, the court did not err in denying his motion.[4]

---

[4] We disagree with appellant's contention that he is situated similarly to the appellant in *Mejia*, where the court found the appellant had established prejudicial error. (*Mejia*, *supra*, 36 Cal.App.5th at 862.) There, the appellant had been advised only that he "may" be deported. (*Id.* at 863, italics omitted.) Furthermore, his counsel advised him he had "'no choice but to take the deal'" and did not talk to him about the immigration consequences of doing so. (*Ibid.*) Here, by contrast, appellant was told he "would" be deported. Nor does appellant contend he was told he had no choice but to accept the plea bargain, and while his declaration stated generically that he "did not receive affirmative and competent advice regarding the potential immigration consequences" of his plea, he failed to explain what advice he did receive, or why that advice caused him to misunderstand the consequences.

## DISPOSITION

The court's order denying appellant's section 1473.7 motion is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

13