## SHERIFF, CLARK COUNTY, Appellant, v. YUSUF LUQMAN, aka JOE CLARK, Respondent.

No. 14566

## SHERIFF, CLARK COUNTY, NEVADA, Appellant, v. SHARON KAY LINGLE, Respondent.

No. 14858

March 22, 1985                                    697 P.2d 107

*Robert J. Miller,* District Attorney, Clark County, for Sheriff, Clark County, Appellant.

*Morgan D. Harris,* Public Defender, Clark County, for Yusuf Luqman, Respondent.

*Brian McKay,* Attorney General, Carson City, *Robert J. Miller,* District Attorney, Clark County, for Sheriff, Clark County, Appellant.

*Morgan D. Harris,* Public Defender, Clark County, for Sharon Kay Lingle, Respondent.

## OPINION

*Per Curiam:*

The Clark County Sheriff's Department appeals from two orders granting pretrial habeas corpus relief to respondents who were arrested for violating various provisions of Nevada's controlled substance act. There are three basic issues before this court: whether the 1981 amendment[1] to the Uniform Controlled Substances Act (UCSA) unconstitutionally delegates to the state board of pharmacy the legislative power to define the elements of a crime; whether the said amendment is unconstitutionally vague for failing to provide adequate notice of the conduct proscribed by its provisions; and, whether respondents may be held accountable for violation of the UCSA where the pharmacy board had not promulgated "schedules" of controlled substances as of the date of the alleged infractions. For reasons stated in this opinion, we have determined that each of the issues must be resolved against respondents and therefore reverse the orders below granting writs of habeas corpus.

The unusual state of affairs in this case came about in the following manner. On July 1, 1981, Chapter 402 went into effect.[2] The new law significantly restructured the manner in

---

[1] 1981 Nev. Stats. ch. 402 §§ 1–39 at 734–750.

[2] Section 38 of Chapter 402 specified that the act "shall become effective upon passage and approval for the purpose of authorizing the adoption of any appropriate regulations by the state board of pharmacy, and for all other purposes on July 1, 1981."

which drugs would be scheduled as controlled substances under the act. Prior to the 1981 amendment, those drugs which were deemed to constitute controlled substances were specifically set out by statute. "Controlled substance" was defined in NRS 453.041 as any "drug, substance or immediate precursor in NRS 453.161 to 453.206." Each statutory schedule contained a list of drugs classified according to the medical efficacy of the drug and the dangers presented by its abuse. Those substances which presented a high potential for abuse and had little or no accepted medical usefulness were listed in NRS 453.161 as Schedule I drugs, while those drugs which presented a low potential for abuse with limited psychological or physical dependence and had a currently accepted medical use were listed in NRS 453.201 as Schedule V drugs. The imposition of criminal penalties for violating the various provisions of the Uniform Controlled Substances Act were dependent upon the schedule under which the particular drug was classified. The higher the drug's potential for abuse, the more severe was the penalty.

Aside from the schedules of drugs set out by statute, NRS 453.146 expressly authorized the state pharmacy board to "administer the provisions of NRS 453.011 to 453.551, inclusive, and . . . add substances to or delete or reschedule all substances enumerated in the schedules in [NRS 453.161 to 453.201] by regulation."

In July of 1981, NRS Chapter 402 went into effect. It is the stated intention of the amended law to repeal the existing statutory schedules of controlled substances found in NRS 453.161 through 453.201, inclusive, and to supplant them with new "Schedules I to V." The apparent intent of the legislature was to relegate the classification of controlled substances exclusively to the pharmacy board, thereby assuring a constant source of currency to the schedules of controlled substances.

It was not until March of 1982 that the pharmacy board eventually met and voted on new regulations delineating the schedules of controlled substances. By and large the new administrative schedules mirrored the previous statutory schedules. The administrative schedules did not go into effect until June 25, 1982. Nev. Admin. Code §§ 453.510–453.550.

During the period between the amendatory repeal of the statutory schedules and the publication of the administrative schedules, the two petitioners were arrested for crimes involving controlled substances.

Yusuf Luqman was arrested on March 31, 1982 and charged on two counts with violating provisions of the Uniform Controlled Substance Act. In the first count, Luqman is charged under NRS 453.337 with possession of and the intent to sell heroin. In count

two, Luqman is charged under NRS 453.336 with unlawful possession of marijuana. Sharon Kay Lingle was arrested in February of 1982 pursuant to an undercover narcotics operation and charged under NRS 453.321 with the unlawful sale of LSD.

In the proceedings below, the petitioners successfully prevailed on the issues now before this court. We reverse.

### Delegation of Authority to Pharmacy Board

The Uniform Controlled Substances Act (UCSA), first enacted in 1971 by the Nevada Legislature, authorizes the state pharmacy board to classify drugs into various schedules according to the drug's propensity for harm and abuse. Since the scheduling of drugs determines the penalties which may result from violation of any of the provisions of the UCSA, it is argued in Luqman's petition for habeas corpus that the act impermissibly delegates legislative authority to an administrative agency.

It is well settled in Nevada that the power to define what conduct constitutes a crime lies exclusively within the power and authority of the legislature. Schmidt v. State, 94 Nev. 665, 584 P.2d 695 (1978); Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975); Egan v. Sheriff, 88 Nev. 611, 503 P.2d 16 (1972). As such, the legislative powers may not be delegated to another branch of government. Nev. Const. art. 3, § 1. *See* State *ex rel.* Bull v. Snodgrass, 4 Nev. 524 (1869). Although the legislature may not delegate its power to legislate, it may delegate the power to determine the facts or state of things upon which the law makes its own operations depend. *Ex rel.* Ginocchio v. Shaughnessy, 47 Nev. 129, 217 P. 581 (1923); *see also* Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935); Field v. Clark, 143 U.S. 649, 694 (1892). Thus, the legislature can make the application or operation of a statute complete within itself dependent upon the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency. Telford v. Gainesville, 65 S.E.2d 246 (Ga. 1951). In doing so the legislature vests the agency with mere fact finding authority and not the authority to legislate. *Ex rel.* Ginocchio v. Shaughnessy, above. The agency is only authorized to determine the facts which will make the statute effective. Montoya v. O'Toole, 610 P.2d 190 (N.M. 1980); State v. King, 257 N.W.2d 693 (Minn. 1977); People v. Uriel, 255 N.W.2d 788 (Mich.Ct.App. 1977); State v. Kellogg, 568 P.2d 514 (Idaho 1977); *see generally* 1 Am.Jur2d *Administrative Law,* § 123 (1962). Such authority will be upheld as constitutional so long as suitable standards are established by the legislature for the agency's use of its power. These standards must be sufficient to guide the agency with respect to the purpose of the law and the

power authorized. Egan v. Sheriff, above; No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967). Sufficient legislative standards are required in order to assure that the agency will neither act capriciously nor arbitrarily. *See* United States v. Pastor, 557 F.2d 930 (2d Cir. 1977).

In the case at hand, although NRS Chapter 402 purported to repeal the statutory schedules, the act retained both the general and specific guidelines listing various factors which are to be taken into account by the pharmacy board when scheduling drugs as well as delineating the requirements by which a drug is classified in an appropriate schedule.[3] The board is thus placed into the role of a fact finder. It is the duty of the board to make findings as to the medical propriety of a drug and its potential for abuse. These findings are accordingly interpreted on the basis of the particular guidelines set forth for each schedule by the legislature. Although the standards for classifying drugs into specific schedules are phrased in general terms, they are sufficient to provide guidance to the board and prevent arbitrary listings. Since the penalties for violating any of the provisions of the act have been established by the legislature, the board has merely been delegated the duty of applying its findings to the legislative scheme. The board's role as a fact finder is thus not an unconstitutional delegation of legislative authority.

## Vagueness of the Uniform Controlled Substances Act

The petitions for habeas corpus filed on behalf of Luqman and Lingle challenge the UCSA as unconstitutionally vague and ambiguous for failing to provide adequate notice of that conduct which is illegal under its provisions. The petitioners argue that the UCSA does not inform an individual of the location of the schedules and therefore provides inadequate notice of the conduct proscribed.

It should be noted at the outset that statutes should be construed, if reasonably possible, so as to be in harmony with the constitution. State of Nevada v. Glusman, 98 Nev. 412, 651 P.2d 639 (1982), *appeal dismissed,* 459 U.S. 1192 (1983); Milchem Inc. v. District Court, 84 Nev. 541, 445 P.2d 148 (1968). To this

---

[3]For example, after taking into consideration the factors listed in NRS 453.146(2) the board may classify a drug in Schedule I if it finds that the substance: (1) has a high potential for abuse and (2) has no accepted medical use in treatment or lacks accepted safety for use in treatment with medical supervision. NRS 453.166. On the other hand, a drug will be listed in Schedule II even though there is a high potential for abuse if there is an accepted medical use for the substance. NRS 453.176.

extent, an act is presumed to be constitutional and will be upheld unless the violation of constitutional principles is clearly apparent. Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983); State of Nevada v. Glusman, above; Ottenheimer v. Real Estate Division, 97 Nev. 314, 629 P.2d 1203 (1981); County of Clark v. City of Las Vegas, 97 Nev. 260, 628 P.2d 1120 (1981). Where the intention of the legislature is clear, it is the duty of the court to give effect to such intention and to construe the language of the statute to effectuate, rather than to nullify, its manifest purpose. Sheriff v. Martin, above; Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975). In light of these principles, we turn to the case at hand.

It is basic to the principles of the due process clause of the fourteenth amendment that an individual may not be held "criminally responsible for conduct which he could not reasonably understand to be proscribed." Sheriff v. Martin, 99 Nev. at 339, 662 P.2d at 636 (quoting United States v. Harriss, 347 U.S. 612 (1954)). The law must afford a person of ordinary intelligence the opportunity to know what is prohibited so that he may act accordingly, and it must also provide explicit standards of application in order to avoid arbitrary and discriminatory enforcement. Sheriff v. Martin, above; *see also* Smith v. Goguen, 415 U.S. 566 (1974). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391 (1926), cited by this court in Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983); State of Nevada v. Glusman, 98 Nev. 412, 651 P.2d 639 (1982), *appeal dismissed,* 459 U.S. 1192 (1983); Wilmeth v. State, 96 Nev. 403, 610 P.2d 735 (1980); In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967).

Although the principle of definiteness is given strict application in penal statutes, Sheriff v. Smith, 91 Nev. 729, 542 P.2d 440 (1975), it does not require impossible standards of specificity. Sheriff v. Martin, above; Wilmeth v. State, above. "The test for granting sufficient warning as to proscribed conduct will be met if there are well settled and ordinarily understood meanings for the words employed when viewed in the context of the entire statutory provision." Woofter v. O'Donnell, 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975).

Under the 1981 amendment "controlled substance" is defined as "a drug, substance or immediate precursor listed in Schedules

I to V, inclusive.'' NRS 453.041. The act does not state where Schedules I to V are located. There is no direct reference to any particular administrative regulation or statutory subsection. This, however, does not by itself affect the constitutionality of the statute.

In a factually similar case, the Washington Supreme Court held that the failure of a statute to indicate *which agency* is delegated *the authority to enumerate a list of drugs or substances within the* provisions of a statute renders the law unconstitutionally vague. State v. Jordan, 588 P.2d 1155 (Wash. 1979). *Jordan* involved the validity of the state's Legend Drugs Act. Since the act did not specify which particular agency was authorized to classify drugs, the court held that the statute which created the crime provided no parameters of the conduct proscribed and was thus unconstitutional. The court additionally noted that the regulations which in fact listed the ''Legend Drugs'' failed to refer back to the statute which made those drugs illegal.

In the present situation, the holding and rationale of *Jordan,* however, do not apply. Although the statutory definition of controlled substance fails specifically to indicate where the schedules of controlled substances are located,[4] the court may, in determining the vagueness of a statute, consider an entire statutory scheme. Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975). When viewing the UCSA *in toto,* it is apparent that the schedules of controlled substances are to be found in the pharmacy board regulations. Delineating the qualifications for a drug classified in Schedule I, NRS 453.166 states: *''The board* shall place a substance in schedule I if. . . .'' (Emphasis added). The statutory guidelines for Schedules II through V similarly indicate that it is ''[t]he board'' that is authorized to schedule drugs. NRS 453.176-453.206. ''Board'' is defined in NRS 453.031 as ''the state board of pharmacy.'' Additionally, within the regulations of the state board of pharmacy, those provisions applicable to the UCSA are entitled, ''Chapter 453, Controlled Substances.'' Nev. Admin. Code §§ 453.510-453.550. Therefore, it is apparent when reading the UCSA that if one desires to determine whether a particular drug is defined as a controlled substance, he or she need only check the pharmacy board regulations.

Since the UCSA clearly states that the pharmacy board is to schedule drugs and since the schedules are set forth in the Nevada Administrative Code, the UCSA is sufficiently definite in its

---

[4] NRS 453.041.

scheme to delegate to the pharmacy board the authority to determine those facts which will make the law operative. Therefore, the Uniform Controlled Substances Act is not unconstitutionally vague.

*Failure of Timely Enactment of Administrative Schedules*

The question remains as to whether the petitioners in this case can be charged with a crime involving a controlled substance when the task of listing and defining such substances had not been carried out by the agency at the time the alleged crimes were committed. We approach this issue with the enjoinder that effect must be given to the clear intent of the legislature when construing statutory language. Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983). If we were to accept respondents' position, the result would entail a substantial hiatus in prosecutable crimes involving controlled substances in Nevada. It would also require us to assume that the legislature intended to risk the continuing validity of the UCSA on the prospect of timely action by the pharmacy board. In either instance, this court would be construing the statute to effectuate a nullification of its manifest purpose. This we cannot do. While it is conceded that penal statutes must be strictly construed, Ex Parte Davis, 33 Nev. 309, 110 P. 1131 (1910), such a construction does not require a court to emasculate its purpose. Pease v. Taylor, 88 Nev. 287, 496 P.2d 757 (1972). As we have previously stated, "it is always the first great object of the courts in interpreting statutes, to place such construction upon them as will carry out the manifest purpose of the legislature, and this has been done in opposition to the very words of an act." Thomas v. State, 88 Nev. 382, 384, 498 P.2d 1314 (1972) (quoting Gibson v. Mason, 5 Nev. 283, 311 (1869)).

Accordingly, we hold that the legislature never intended to decriminalize, even temporarily, conduct proscribed by the UCSA. Rather, it was the intent of the legislature to invalidate the legislative schedules upon the adoption of new, administrative schedules by the pharmacy board.

The Montana Supreme Court was faced with a similar situation in State v. Meader, 601 P.2d 386 (Mont. 1979), where the Board of Pharmacists and Department of Health failed to revise and republish the schedule of dangerous drugs as required by the Montana Dangerous Drugs Act. In sustaining the continuing validity of the act, the court held:

> the Dangerous Drug Act does not indicate that the legislature intended the Board of Pharmacists to have the power, by

inaction, to decriminalize the possession of all type of drugs and substances. Rather, we find that the legislature intended the original five schedules to be effective until such time as the Board and the Department took steps to carry out their statutory duties to revise and republish.

601 P.2d at 389.

Accordingly, we hold that the controlled substances specified in former schedules NRS 453.161 through 453.201 notwithstanding use of the word "repeal," continued in effect and were automatically incorporated into the new corresponding schedules when the 1981 amendment took effect. Although the new schedules were not officially published for approximately one year after the effective date of the amendment, the former schedules, which were published and available to all who were interested, constituted the intended, legal equivalent of the new schedules until such time as the board adopted and published the latter schedules.

Our determination in support of the legislative purpose of the amendment can hardly be viewed as prejudicial to respondents. The controlled substances involved in these appeals are heroin, LSD, and marijuana.[5] It has long been common knowledge in Nevada that the possession and sale of these drugs constitute criminal acts. Luqman and Lingle will not be heard to argue in this court that there was a moratorium on prosecution of heroin, LSD, and marijuana offenses between July 1, 1981 and June of 1982. We perceive no consequence of unfairness in the stated construction of the 1981 amendment.

For the reasons specified above, the orders issued by the district court granting pretrial habeas corpus relief are reversed.

---

[5]As a matter of interest, the charges against Luqman included possession of marijuana. Marijuana is specifically defined in NRS 453.096. Although marijuana is not defined as a controlled substance, NRS 453.336(3) prescribes the punishment for possession of less than one ounce of marijuana. Therefore, the failure of the pharmacy board to schedule controlled substances did not, in any event, affect this charge against Luqman.