**132 Nev., Advance Opinion 54**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| STEVE DELL MCNEILL,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 66697<br>**FILED**<br>JUL 2 8 2016<br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of violation of conditions of lifetime supervision. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

*Reversed and remanded.*

Philip J. Kohn, Public Defender, and Howard Brooks and Sharon G. Dickinson, Deputy Public Defenders, Clark County, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Jonathan J. Cooper, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, J.:

In this appeal, we consider whether the State Board of Parole Commissioners may impose conditions not enumerated in NRS 213.1243 on a sex offender subject to lifetime supervision. We conclude that the

16-23421

plain language of NRS 213.1243 does not grant the Board authority to impose additional conditions. We further conclude that this omission was intentional because the Legislature may not delegate its power to legislate. We therefore reverse the district court's judgment of conviction based on violations of conditions of lifetime supervision not enumerated in NRS 213.1243.

## BACKGROUND

Appellant Steve McNeill is a convicted sex offender on lifetime supervision. According to McNeill's lifetime supervision agreement, he was required to pay certain fees, submit to a urinalysis, meet a curfew, and maintain full-time employment, among other things.

After five years of lifetime supervision, McNeill was reassigned to Ashley Mangan, a parole and probation officer in the sex offender unit. McNeill reported to Mangan at the Division of Parole and Probation for the first time in March 2013. Mangan established a curfew for McNeill, requiring that he be present near the intersection of two specified streets referred to as his "residence" between 5 p.m. and 5 a.m.[1]

According to Mangan, she was unable to locate McNeill at his residence when she went to visit McNeill to confirm that he was in compliance with his curfew. Thus, when McNeill reported to Mangan in April, Mangan requested that McNeill draw a map of where he was sleeping. McNeill complied and requested an extended curfew. Mangan established a later curfew, requiring that McNeill be at his residence by 8

---

[1]McNeill was homeless. Thus, the intersection of two streets was established as his "residence."

 

p.m. rather than 5 p.m. McNeill also revealed that he had not been attending counseling. Mangan requested that he reenroll.

When McNeill reported in May, he provided different cross streets for his residence and drew Mangan a more detailed map of where he was sleeping.

Mangan did not meet with McNeill in June because McNeill was assigned to another officer for supervision. However, McNeill was assigned to Mangan again in July. According to Mangan, when she contacted McNeill to inform him that she would be supervising him again, he hung up on her.

When McNeill went to meet with Mangan later in July, Mangan arrested McNeill for noncompliance. According to Mangan, McNeill failed to attend counseling, make curfew, pay fees, and maintain employment. The State declined to proceed with charges.

In August, upon McNeill's arrival, Mangan requested that he submit to a urinalysis. McNeill refused. Mangan then took McNeill to meet with her supervisor, who was unable to persuade McNeill to comply. McNeill affirmed that he would not submit to urinalyses, had no plans to abide by a curfew, and would sleep where he chose.

Thereafter, Mangan attempted to contact McNeill in person near the identified intersection and by phone, but was unsuccessful. McNeill did not report thereafter. Instead, he sent a cease and desist letter stating that the Division of Parole and Probation had no authority over him and advising that it should discontinue contacting him.

The State filed a criminal complaint in March 2014, charging McNeill with violation of conditions of lifetime supervision (count 1) and prohibited acts by a sex offender (count 2). The State alleged that McNeill

violated conditions of lifetime supervision by refusing to submit to a urinalysis, failing to report, failing to obtain residence approval, failing to cooperate with his supervising officer, failing to maintain full-time employment, failing to abide by a curfew, and being terminated from his sex offender counseling.

After a three-day trial, McNeill requested a directed verdict on both charges. The district court dismissed count two, but the jury found McNeill guilty on count one. The district court also denied McNeill's subsequent motion for an arrest of judgment, determining that the Board of Parole Commissioners had authority through the language of NRS 213.1243 to establish conditions of lifetime supervision not enumerated in the statute. This appeal followed.

## DISCUSSION

On appeal, McNeill contends that NRS 213.1243 does not delegate authority to the Board to impose additional lifetime supervision conditions that are not enumerated in the statute. Thus, McNeill argues that he did not violate NRS 213.1243, even if he violated the additional conditions imposed by the Board. In contrast, the State argues that the Board may establish additional conditions not specifically enumerated in NRS 213.1243 when supervising a sex offender on lifetime supervision.

"[W]e review questions of statutory interpretation de novo." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). When interpreting statutes, we give effect to legislative intent. *Id.* "The starting point for determining legislative intent is the statute's plain meaning; when a statute is clear on its face, a court cannot go beyond the statute in determining legislative intent." *Id.* (internal quotations omitted).

We conclude that the plain language of NRS 213.1243 does not delegate authority to the Board to impose additional conditions not enumerated. NRS 213.1243(1) provides that "[t]he Board shall establish by regulation a program of lifetime supervision of sex offenders" and that the program must provide for supervision by officers in the Division of Parole and Probation. The conditions of lifetime supervision are explicitly set forth in the statute.[2] For example, NRS 213.1243(3) provides that a sex offender's residence must be approved by a supervising officer, and a sex offender must keep the Division aware of his or her current address. Subsection 4 of NRS 213.1243 further provides that, as a condition of lifetime supervision, a Tier 3 sex offender must stay 500 feet away from certain enumerated places. There are additional residence, stay-away, and monitoring conditions for a Tier 3 sex offender convicted of certain sexual offenses involving a child under the age of 14 years. NRS 213.1243(5). The program of lifetime supervision must also include a no-contact condition. NRS 213.1243(10). A violation of any condition imposed is a Category B felony that may be "punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000." NRS 213.1243(8). What is not included in NRS 213.1243 is any suggestion that additional conditions may be imposed, and without an explicit grant of authority, we presume the

---

[2]The Board is not required to impose the conditions set forth in subsections 3, 4, and 5 of the statute if the Board finds and states in writing that extraordinary circumstances are present. *See* NRS 213.1243(9).

SUPREME COURT
OF
NEVADA

(O) 1947A

5

omission to be deliberate. *Sheriff v. Andrews*, 128 Nev. 544, 547-48, 286 P.3d 262, 264 (2012) (concluding that because NRS 212.093(1) does not specifically prohibit county jail inmates from possessing cell phones, the plain and unambiguous language did not proscribe the conduct).

Our assumption of purposeful omission is especially appropriate in conjunction with the consideration that we do not presume that the Legislature has done something absurd. *Eller Media Co. v. City of Reno*, 118 Nev. 767, 770, 59 P.3d 437, 439 (2002) ("[S]tatutes should always be construed so as to avoid absurd or unreasonable results."). Without a doubt, the Legislature may not delegate its power to legislate. *Sheriff v. Luqman*, 101 Nev. 149, 153, 697 P.2d 107, 110 (1985); *see also* Nev. Const. art. 3, § 1; *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935) (similarly noting that legislative power is vested in Congress). And because a violation of a condition of lifetime supervision is a new crime, *see* NRS 213.1243(8), if the statute is read to mean, as the State suggests, that the Board may create additional conditions, then the Board would effectively have authority to create law. Because we presume that the Legislature is aware that it may not delegate the power to legislate pursuant to the separation of powers, we presume that it acted in accordance.

The State argues that the Legislature may appropriately delegate authority to administrative agencies to facilitate the practical execution of laws it enacts without violating the separation of powers. It is well settled that "[a]lthough the legislature may not delegate its power to legislate, it may delegate the power to determine the facts or state of things upon which the law makes its own operations depend." *Luqman*, 101 Nev. at 153, 697 P.2d at 110.

SUPREME COURT
OF
NEVADA

(O) 1947A

Thus, the legislature can make the application or operation of a statute complete within itself dependent upon the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency. *Telford v. Gainesville*, 65 S.E.2d 246 (Ga. 1951). In doing so the legislature vests the agency with mere fact finding authority and not the authority to legislate. *Ex rel. Ginocchio v. Shaughnessy*, [47 Nev. 129, 217 P. 581 (1923)]. The agency is only authorized to determine the facts which will make the statute effective. *Montoya v. O'Toole*, 610 P.2d 190 (N.M. 1980); *State v. King*, 257 N.W.2d 693 (Minn. 1977); *People v. Uriel*, 255 N.W.2d 788 (Mich. Ct. App. 1977); *State v. Kellogg*, 568 P.2d 514 (Idaho 1977); *see generally* 1 Am.Jur.2d *Administrative Law*, § 123 (1962). Such authority will be upheld as constitutional so long as suitable standards are established by the legislature for the agency's use of its power. These standards must be sufficient to guide the agency with respect to the purpose of the law and the power authorized. *Egan v. Sheriff*, [88 Nev. 611, 503 P.2d 16 (1972)]; *No. Las Vegas v. Pub. Serv. Comm'n*, 83 Nev. 278, 429 P.2d 66 (1967). Sufficient legislative standards are required in order to assure that the agency will neither act capriciously nor arbitrarily. *See United States v. Pastor*, 557 F.2d 930 (2d Cir.1977).

*Id.* at 153-54, 697 P.2d at 110.

The State likens the case at bar to *Luqman*. In *Luqman*, the Clark County Sheriff's Department appealed from orders granting pretrial habeas corpus relief to individuals detained for violating Nevada's controlled substance act. *Id.* at 151, 697 P.2d at 108. One of the issues raised was whether an amendment to the Uniform Controlled Substances Act unconstitutionally delegated the legislative power to define the elements of a crime to the state board of pharmacy. *Id.* We determined

that the delegation of authority was not unconstitutional because the board was merely acting as a fact-finder. *Id.* at 154, 697 P.2d at 110-11. We explained that "the act retained both the general and specific guidelines listing various factors which are to be taken into account by the pharmacy board when scheduling drugs as well as delineating the requirements by which a drug is classified in an appropriate schedule." *Id.*

This case is distinguishable from *Luqman.* In enacting NRS 213.1234, the Legislature did not explicitly provide the Board the authority to create additional conditions. And even assuming that the Legislature had intended to do so, that delegation of power would fail because the Legislature has not provided guidelines informing the Board how, when, or under what circumstances, it may create additional conditions. *See id.*

Despite the missing language and potential problems concerning the delegation of authority if read alternatively, the district court found justification for its conclusion that the Board may establish additional conditions in the language of NRS 213.1243(8): "[A]" sex offender who commits a violation of a *condition imposed on him or her pursuant to the program of lifetime supervision* is guilty of a category B felony." (Emphasis added.) Presumably, then, the district court reasoned that if the Legislature did not intend to permit the Board to add conditions, then it would have more narrowly provided in subsection 8 "a condition imposed... *pursuant to NRS 213.1243*," rather than "a condition imposed... *pursuant to the program of lifetime supervision.*" We conclude that, although the Legislature could have more narrowly tailored the language, "a condition imposed . . . pursuant to the program of

SUPREME COURT
OF
NEVADA

(O) 1947A

lifetime supervision" necessarily encompasses only the conditions enumerated by the Legislature in NRS 213.1243. Thus, it cannot be concluded from a plain reading that the Legislature extended authority to the Board to create additional conditions, rather than for the Board to create a program including the conditions enumerated in NRS 213.1243 to be carried out by the Division's officers.

Because the Board has no authority to impose conditions not enumerated in NRS 213.1243, the nonenumerated conditions the Board imposed on McNeill were unlawful, and McNeill did not violate the law when he failed to comply. It is not, however, clear which condition(s) the jury found McNeill violated: refusing to submit to a urinalysis, failing to report, failing to have his residence approved, failing to cooperate with his supervising officer, failing to maintain full-time employment, failing to abide by a curfew, *and/or* being terminated from his sex offender counseling. Only one of these purported violations is enumerated in NRS 213.1243: failure to have a residence approved. *See* NRS 213.1243(3). And it cannot be concluded that the jury found that McNeill failed to have his residence approved because the charging document and jury instructions allowed the jury to find him guilty based on *one or more* of the identified violations.

Because the Board-imposed conditions were unlawful, and any Board violations cannot be separated from any NRS 213.1243 violations, we reverse the judgment of conviction and remand for a new trial on the violation of failure to have a residence approved.[3]

_____, J.
Douglas

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

---

[3]In light of this ruling, we need not address McNeill's remaining arguments on appeal.