**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GIBRAN RICHARDO FIGUEROA-
BELTRAN,
*Defendant-Appellant.*

No. 16-10388

D.C. No.
2:15-cr-00176-
KJD-GWF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted August 17, 2017
Submission Withdrawn June 6, 2018
Resubmitted April 20, 2021
San Francisco, California

Filed April 27, 2021

Before: Diarmuid F. O'Scannlain and Johnnie B.
Rawlinson, Circuit Judges, and Sarah S. Vance,[*]
District Judge.

Opinion by Judge Rawlinson

---

[*] The Honorable Sarah S. Vance, United States District Judge for the
Eastern District of Louisiana, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed a sentence for being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326.

The defendant contended that the district court erred in applying a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) based on his prior state conviction for possession of cocaine. He asserted that the enhancement does not apply because the statute of conviction, Nevada Revised Statutes § 453.337, criminalizes possession of controlled substances that are not listed in the federal Controlled Substance Act and thus did not categorically set forth a drug trafficking offense. The defendant further asserted that the district court erred in relying on the modified categorical approach because § 453.337 is not divisible, as is required for application of the modified categorical approach.

Based on the guidance provided by the Nevada Supreme Court in response to the panel's certification of questions, the panel held that § 453.337 is a divisible statute because possession of a specific controlled substance is an element of the crime, and not merely a means of committing the possession-for-sale offense. The panel wrote that although the Nevada schedules of controlled substances are not coterminous with the listing of prohibited substances delineated in the Controlled Substances Act, § 453.337 is not

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

fatally overbroad, because a jury must unanimously agree that a defendant possessed a specific controlled substance in order to convict under the statute. As a result, the panel applied the modified categorical approach to determine if the defendant's conviction was for a drug trafficking offense. Examining the information and judgment in the defendant's state case, the panel observed that the defendant entered a plea of guilty to possessing cocaine for the purpose of sale, and that the district court therefore correctly applied the § 2L1.2(b)(1)(A) enhancement.

The panel held that the district court did not plainly err in its characterization of the defendant's criminal history and that the defendant failed to demonstrate that the district court's determination affected his substantial rights. The panel held that the district court fully considered the defendant's personal history, and did not err in declining to reduce the defendant's sentence due to proposed amendments to the Sentencing Guidelines. The panel rejected the defendant's contentions that the district court procedurally and substantively erred in imposing a three-year term of supervised release.

**COUNSEL**

Cristen C. Thayer (argued) and Amy B. Cleary, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellant.

Nancy M. Olson (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney, United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Gibran Richardo Figueroa-Beltran (Figueroa-Beltran) appeals the district court's imposition of a custodial sentence of forty-one months, and three years of supervised release premised on Figueroa-Beltran's guilty plea to being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326.[1]      Figueroa-

---

[1] 8 U.S.C. § 1326(a) provides that:

> any alien who—(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such

Beltran contends that the district court erred in applying a sixteen-level enhancement pursuant to United States Sentencing Guideline (U.S.S.G.) § 2L1.2(b)(1)(A)(i) based on his prior state conviction for possession of cocaine. Figueroa-Beltran asserts that his sentence was improperly enhanced because the statute of conviction, Nevada Revised Statutes (NRS) § 453.337 (§ 453.337) did not categorically set forth a drug trafficking offense under *Descamps v. United States*, 570 U.S. 254 (2013). Figueroa-Beltran specifically maintains that § 453.337 criminalizes possession of controlled substances not listed in the federal Controlled Substances Act.

Figueroa-Beltran further asserts that his sentence was procedurally and substantively unreasonable because the district court made factual findings unsupported by the record, failed to impose a more lenient sentence consistent with proposed amendments to the Sentencing Guidelines, and improperly ordered three years of supervised release.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.   BACKGROUND

In May, 2012, Figueroa-Beltran was charged with possession of cocaine with intent to sell in violation of NRS

---

alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

§ 453.337.  Figueroa-Beltran entered a guilty plea in Nevada state court to the offense, and was sentenced to forty-eight months' imprisonment, with parole eligibility after nineteen months.

In 2015, Figueroa-Beltran was indicted for being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326(a).  Figueroa-Beltran subsequently pled guilty to the charge.

Prior to sentencing, the probation office recommended in its presentence report (PSR) a custodial sentence of forty-one months' imprisonment and three years of supervised release. The PSR calculated a base offense level of eight, and an adjusted offense level of twenty-four, which included a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2 (b)(1)(A)(i) (2015),[2] due to Figueroa-Beltran's commission of a drug trafficking offense.  The PSR calculated a total offense level of twenty-one after a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Based on his prior arrests, the PSR calculated Figueroa-Beltran's criminal history score at three.

The PSR recommended a sentencing guidelines range of forty-one to fifty-one months' imprisonment, and a custodial sentence of forty-one months, at the low end of the sentencing range.  Although the PSR acknowledged that supervised release was not generally imposed under U.S.S.G. § 5D1.1 for defendants who will be removed from the United States after incarceration, the PSR nevertheless recommended three years of supervised release.

---

[2] The PSR used the 2015 Sentencing Guidelines.

In his sentencing memorandum, Figueroa-Beltran objected to the sixteen-level enhancement imposed pursuant to U.S.S.G. § 2L1.2(b)(1)(A).  Figueroa-Beltran asserted that violation of NRS § 453.337 was not categorically a drug trafficking offense because the state statute penalized a broader swath of criminal conduct than the federal generic offense.  In particular, Figueroa-Beltran maintained that:

> Nevada, through its Schedules I and II, criminalize[d] the possession of more substances than [did] federal law.  For example, both in 2012 and currently, Nevada listed . . . Butanediol and Gamma butyrolactone in Schedule I, and Benzolyecgonine in Schedule II.  Neither of these drugs, however, were federally scheduled in 2012.  Nor [were] these substances currently scheduled federally.

(citation omitted).  Figueroa-Beltran further asserted that, because NRS § 453.337 was not divisible, the district court was precluded from reviewing the underlying record for Figueroa-Beltran's conviction under the modified categorical approach.  *See Descamps*, 570 U.S. at 260 (describing the modified categorical approach).

Additionally, Figueroa-Beltran posited that 18 U.S.C. § 3553(a) and proposed amendments to U.S.S.G. § 2L1.2 supported a reduced guidelines range in his case.  Figueroa-Beltran maintained that, under the proposed amendments, only an eight-level enhancement applied, resulting in an applicable guidelines range of fifteen to twenty months' imprisonment.

Finally, Figueroa-Beltran argued that imposition of supervised release was improper under U.S.S.G. § 5D1.1(c) because he would be removed to Mexico after completion of his custodial sentence. Figueroa-Beltran emphasized that he did not have any prior convictions for illegal reentry.

Relying on *United States v. Benitez-Perez*, 367 F.3d 1200 (9th Cir. 2004), the district court rejected Figueroa-Beltran's contention that his conviction for possession of cocaine in violation of NRS § 453.337 was not for a categorical drug trafficking offense. The district court concluded that, because *Benitez-Perez* had not been overruled, resort to the modified categorical approach was permissible in determining whether Figueroa-Beltran's possession of cocaine supported the sixteen-level enhancement. Applying the modified categorical approach, the district court determined that the "charging document and judgment of conviction" in Figueroa-Beltran's state prosecution reflected that he "was charged and convicted of possessing for sale a controlled substance, cocaine."[3]

The district court calculated a base offense level of eight, and an adjusted offense level of twenty-four, incorporating the sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A). The district court deducted three levels due to Figueroa-Beltran's acceptance of responsibility, resulting in a total offense level of twenty-one. Based on a "Criminal History Category of II," the district court determined that the applicable guidelines range was forty-one to fifty-one months' imprisonment, with supervised release of "up to three years."

---

[3] Figueroa-Beltran did not object to the government's submission of the information and judgment.

During his allocution, Figueroa-Beltran sought leniency and conveyed that he was unaware that he could be penalized for the drug offense after serving his prison sentence.

In rejecting Figueroa-Beltran's request for a reduced sentence, the district court explained that:

> [Figueroa-Beltran's] criminal history include[d] an arrest for sale of a controlled substance [on] May 13th, 2013. Those charges were dismissed or the state decided not to proceed. It [was] evident that the reason they decided not to proceed was because [Figueroa-Beltran] was being deported . . . and was deported on June 4th, 2013 . . . within two to three weeks after the arrest.

The district court also observed that Figueroa-Beltran was arrested in 2015, and that twenty-six charges were pending involving possession with intent to distribute heroin.

Based on Figueroa-Beltran's criminal history, the district court concluded that a sentence of forty-one months' imprisonment was "adequate but not more than necessary to accomplish the purposes of sentencing." The district court also imposed three years of supervised release "as an added measure of deterrence to a defendant who believe[d] that once he has been punished for one crime, it should not be taken into consideration with respect to any future sentence."

Figueroa-Beltran filed a timely notice of appeal.

## II.  STANDARDS OF REVIEW

"We review de novo the classification of a defendant's prior conviction for purposes of applying the Sentencing Guidelines." *United States v. Murillo-Alvarado*, 876 F.3d 1022, 1028 (9th Cir. 2017) (citation omitted).

"When reviewing a sentence for reasonableness, we merely ask whether the trial court abused its discretion." *United States v. Cate*, 971 F.3d 1054, 1057 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted). We "conduct a two-step analysis when reviewing the reasonableness of a sentence:  we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *Id.* (citation, alteration, and internal quotation marks omitted).

## III.     DISCUSSION

### A.  Figueroa-Beltran's State Conviction

Figueroa-Beltran urges us to conclude that the district court erred in applying a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because his Nevada conviction was not categorically a drug trafficking offense.  Figueroa-Beltran maintains that, because Nevada criminalizes possession of controlled substances that are not listed in the Controlled Substance Act, his conviction was not categorically a drug trafficking offense.  Figueroa-Beltran further asserts that the district court erred in relying on the modified categorical approach to determine that his possession of cocaine conviction warranted a sixteen-level enhancement because NRS § 453.337 is not divisible, as is required for application of the modified categorical approach.

At the time of Figueroa-Beltran's conviction, § 453.337 provided in pertinent part:

> it is unlawful for a person to possess for the purpose of sale flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any controlled substance classified in schedule I or II.

Nev. Rev. Stat. § 453.337(1) (2012).

The commentary to U.S.S.G. § 2L1.2 (2015) defined a "drug trafficking offense" as:

> an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 2L1.2, cmt. app. n.l (B)(iv) (2015).  If Figueroa-Beltran's Nevada conviction qualified as a drug trafficking offense, the Guideline provided for a sixteen-level enhancement. *See* U.S.S.G. § 2L1.2(b)(1)(A).

We have held that "the term controlled substance, as used in the drug trafficking offense definition in U.S.S.G. § 2L1.2, means those substances listed in the [Controlled Substances Act]." *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th

2012).   Consequently, our task is to compare the Nevada statute of conviction with "those substances listed in the [Controlled Substances Act]." *Id.*

To determine whether Figueroa-Beltran's Nevada conviction is categorically a drug trafficking offense, we apply the categorical approach articulated by the United States Supreme Court in *Descamps*.   There, the Supreme Court explained that we must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime—*i.e.*, the offense as commonly understood." 570 U.S. at 257 (internal quotation marks omitted).   "Sentencing courts may look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Id.* at 261 (citation and internal quotation marks omitted) (emphasis in the original).   If the state statute of conviction "sweeps more broadly than the generic crime," the conviction may not be used as an enhancement "even if the defendant actually committed the offense in its generic form." *Id.*   "The key . . . is elements, not facts." *Id.* Nevertheless, "[i]f the statute of conviction is overbroad, we determine whether the statute is divisible." *Gomez Fernandez v. Barr*, 969 F.3d 1077, 1086 (9th Cir. 2020) (citation omitted).   "A statute is divisible if it has multiple, alternative elements, and so effectively creates several different crimes. . . ." *Id.* (citation and internal quotation marks omitted).   If the statute is divisible, we may apply the modified categorical approach to determine whether the conviction qualifies for the enhancement.   The modified categorical approach permits consideration of a limited class of materials, such as charging documents, plea agreements, and judgments of conviction to pinpoint the crime of conviction. *See id.*

In *Benitez-Perez*, we held that a conviction under § 453.337(1) was categorically for a drug trafficking offense because "the only conduct criminalized [was] possession of a controlled substance for the purpose of sale." 367 F.3d at 1204. However, without the benefit of evolving Supreme Court precedent regarding application of the categorical approach articulated in *Descamps*, we did not address whether § 453.337 was divisible or indivisible in view of its inclusion of controlled substances not listed in the Controlled Substance Act.

In the absence of any other indicators of divisibility or indivisibility, we turned to Nevada precedent in an effort to discern whether a jury must unanimously find that a defendant possessed a certain controlled substance as an element of § 453.337. Two cases contained helpful discussion, but neither case was directly dispositive.

*Sheriff v. Luqman*, 697 P.2d 107, 108 (Nev. 1985) involved a challenge to "various provisions of Nevada's controlled substance act." The Nevada Supreme Court examined the authority of the state board of pharmacy to "classify drugs into various schedules according to the drug's propensity for harm and abuse." *Id.* at 110. The Court opined that "[s]ince the penalties for violating any of the provisions of the act have been established by the legislature, the board has merely been delegated the duty of applying its findings to the legislative scheme." *Id.* at 110–11. The Court further articulated that "[a]lthough the legislature may not delegate its power to legislate, it may delegate the power to determine the facts or state of things upon which the law makes its own operations depend." *Id.* at 110 (citations omitted). "Thus, the legislature can make the application or operation of a statute complete within itself dependent upon

the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency. . . ." *Id.* (citation omitted).

In *Muller v. Sheriff*, 572 P.2d 1245 (Nev. 1977), the Nevada Supreme Court rejected the defendant's assertion that "since the sale of . . . different controlled substances was consummated simultaneously in one transaction, his conduct [did] not constitute two separate offenses for which he may be charged." *Id.* at 1245. Rather, the Court held that, under the controlled substance statutes applicable to heroin and cocaine, "[t]he sale of heroin and the sale of cocaine [were] distinct offenses requiring separate and different proof." *Id.* (citations omitted).

After reviewing *Luqman* and *Muller*, we concluded that the two decisions were "in conflict," because "*Luqman* suggest[ed] that the identity of a controlled substance [was] a non-elemental factual determination," whereas "*Muller* appear[ed] to conclude that the sale of one controlled substance [was] an offense distinct from the sale of another, and proof of the identity of the controlled substance at issue [was] required." *United States v. Figueroa–Beltran*, 892 F.3d 997, 1003–04 (9th Cir. 2018). Because we were unable to "say with confidence that the Nevada precedent definitively answer[ed] the question whether § 453.337 [was] divisible as to the identity of a controlled substance," we certified the following questions to the Nevada Supreme Court:

> 1. Is Nev. Rev. Stat. § 453.337 divisible as to the controlled substance requirement?

> 2. Does the decision in *Luqman* conclude that the existence of a controlled substance is a

fact rather than an element of § 453.337, rendering the statute indivisible? If so, can this conclusion be reconciled with *Muller*?

3. Does the decision in *Muller* conclude that offenses under § 453.337 comprise distinct offenses requiring separate and different proof, rendering the statute divisible as to the controlled substance requirement? If so, can this conclusion be reconciled with *Luqman*?

*Id.* at 1004 (internal quotation marks omitted).[4]

The Nevada Supreme Court accepted these certified questions, but "reframe[d] them into one question to better reflect existing state law principles: Is the identity of a substance an element of the crime articulated in NRS 453.337?" *Figueroa-Beltran v. United States*, 467 P.3d 615, 618 (Nev. 2020). The Nevada Supreme Court concluded that "the identity of a substance is an element of the crime described in NRS 453.337, such that each schedule I or II controlled substance simultaneously possessed with the intent to sell constitutes a separate offense." *Id.*

In reaching this conclusion, the Nevada Supreme Court acknowledged that § 435.337 was ambiguous because "'any controlled substance' as used by the Legislature in NRS 453.337 could mean, alternatively, 'one controlled

---

[4] Figueroa-Beltran objected to our certification order to the Nevada Supreme Court to resolve the conflict in Nevada law concerning the elements of § 435.337. However, we denied Figueroa-Beltran's petition, and the United States Supreme Court denied his petition for a writ of certiorari. *See Figueroa-Beltran v. United States*, 139 S.Ct. 1445 (2019).

substance,' 'some controlled substances,' or 'all controlled substances' listed under schedule I or II, or under both schedules." *Id.* at 622. Relying on *Muller* and *Andrews v. State*, 412 P.3d 37 (Nev. 2018), the Court clarified that under the statute:

> Proof of the identity of the item possessed is an element of the offense. Where possession of separate drugs is charged, while the evidence relating to possession may be the same for each charge, the evidence describing the substance and establishing its drug identity would undoubtedly differ with respect to each drug charged. Hence, the totality of evidence required to prove one count would not establish all of the elements required with respect to the other counts.

*Id.* at 623 (alterations and footnote reference omitted). The Nevada Supreme Court explained that *Luqman* had no bearing on whether identity of the controlled substance was an element of the possession-for-sale offense because "*Luqman* applied to a special circumstance involving legislative delegation of power," and "the *Luqman* court's reasoning for why there was no unconstitutional delegation of authority does not apply here." *Id.* at 623 n.6. The Nevada Supreme Court concluded that "the particular identity of a substance is an element that must be proven to sustain a conviction under NRS 453.337." *Id.* at 623 (footnote reference omitted).

In light of the guidance provided by the Nevada Supreme Court, we hold that § 453.337 is a divisible statute because possession of a specific controlled substance is an element of

the crime, and not merely a means of committing the possession-for-sale offense. Although the Nevada schedules of controlled substances are not coterminous with the listing of prohibited substances delineated in the Controlled Substances Act, § 453.337 is not fatally overbroad, because a jury must unanimously agree that a defendant possessed a specific controlled substance in order to convict under the statute. *See Figueroa-Beltran*, 467 P.3d at 623. As a result, we may apply the modified categorical approach to determine if Figueroa-Beltran's conviction was for a drug trafficking offense. *See Descamps*, 570 U.S. at 260 (explaining that the modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction").

Under the modified categorical approach, we "examine judicially noticeable documents of conviction to determine which statutory phrase was the basis for the conviction." *Gomez Fernandez*, 969 F.3d at 1086 (citation and internal quotation marks omitted). "These documents include the charging document, the terms of a plea agreement, the transcript of the plea colloquy, and comparable judicial records such as the judgment." *Id.* (citation, alteration, and internal quotation marks omitted). The information filed in Figueroa-Beltran's state prosecution charged him with "wilfully, unlawfully, feloniously, knowingly, and intentionally possess[ing], for the purpose of sale, a controlled substance, to-wit: Cocaine" in violation of NRS § 453.337. The judgment reflects that Figueroa-Beltran entered a plea of guilty to the charged offense. Based on the information and judgment, the district court correctly applied a sixteen-level enhancement pursuant to U.S.S.G.

§ 2L1.2(b)(1)(A) for Figueroa-Beltran's Nevada conviction.[5] *See United States v. Martinez-Lopez*, 864 F.3d 1034, 1043 (9th Cir. 2017) (concluding that possession of cocaine with intent to sell was a drug trafficking offense warranting a sixteen-level enhancement under the sentencing guidelines).

## B. Procedural And Substantive Reasonableness Of The Sentence

### 1. Criminal History Determination

Figueroa-Beltran contends that the district court procedurally erred when it determined that his criminal history included charges for sale of a controlled substance. Figueroa-Beltran maintains that the district court clearly erred by speculating that the state dismissed pending charges due to Figueroa-Beltran's imminent removal from the United States.

Because Figueroa-Beltran did not object to the district court's criminal history determination during the sentencing hearing, we review this issue under the plain error standard. *See United States v. Herrera*, 974 F.3d 1040, 1045 (9th Cir. 2020) (explaining that "[p]lain error review applies to sentencing objections first raised on appeal") (citation omitted). The district court did not plainly err in its characterization of Figueroa-Beltran's criminal history based on its reasonable inference that prosecution of the controlled

---

[5] Because the propriety of the sentencing enhancement imposed by the district court is clear based on the Nevada Supreme Court's response to our certified question and the documents of conviction already referenced the record, we **DENY** the pending motions for judicial notice and decline to expand the record on appeal.

substance charge filed on May 13, 2013, was dismissed due to Figueroa-Beltran's pending removal from the United States on June 4, 2013.

In addition, Figueroa-Beltran fails to demonstrate that the district court's determination "affected [his] substantial rights," as required under plain error review. *Id.* (citation and alteration omitted). The district court properly considered Figueroa-Beltran's extensive criminal history, including several charges involving possession of controlled substances, in imposing a sentence at the low end of the guidelines' range. In any event, the district court's determination premised on Figueroa-Beltran's criminal history was an alternative to application of the sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A). Because we have concluded that application of the sixteen-level enhancement was proper, the district court's alternative conclusions concerning Figueroa-Beltran's criminal history do not affect the outcome of this appeal. *See United States v. Hernandez-Valenzuela*, 932 F.2d 803, 805 (9th Cir. 1991) (declining to remand for resentencing because "[t]he district court made clear that the grounds [for its sentencing decision] were alternative, not cumulative").

## 2. Consideration of Personal History

Figueroa-Beltran asserts that the district court failed to adequately consider his personal history. Figueroa-Beltran maintains that leniency was warranted because he lacked prior convictions for illegal reentry and was never convicted of a violent offense. However, the district court fully considered Figueroa-Beltran's personal and criminal histories, which included numerous arrests and pending charges for possession of controlled substances.

### 3. Proposed Amendments to the Sentencing Guidelines

Figueroa-Beltran submits that his sentence was substantively unreasonable because the district court declined to apply proposed amendments to the Sentencing Guidelines, and the district court failed to adequately consider Figueroa-Beltran's particular history.

In 2016, the Sentencing Commission proposed amendments to illegal reentry offenses under U.S.S.G. § 2L1.2, including:

> a new tiered enhancement based on prior convictions for illegal reentry offenses under 8 U.S.C. 1253, 1325(a), or 1326. A defendant who has one or more felony illegal reentry convictions will receive an increase of 4 levels. Illegal reentry offense is defined in the commentary to include all convictions under 8 U.S.C. 1253 (failure to depart after an order of removal) and 1326 (illegal reentry), as well as second or subsequent illegal entry convictions under § 1325(a). A defendant who has two or more misdemeanor illegal entry convictions under 8 U.S.C. 1325(a) will receive an increase of 2 levels.

Notice of submission to Congress of amendments to the sentencing guidelines effective November 1, 2016, United States Sentencing Commission, 81 Fed. Reg. 27262, 27272 (May 5, 2016).

The Sentencing Commission explained that:

> The amendment reduces somewhat the level of enhancements for criminal conduct occurring before the defendant's first order of deportation and adds a new enhancement for criminal conduct occurring after the defendant's first order of deportation.  It also responds to concerns that prior convictions for illegal reentry offenses may not be adequately accounted for in the existing guideline by adding an enhancement for prior illegal reentry and multiple prior illegal entry convictions.

*Id.*

We have recognized that "[a] sentencing court . . . has the discretion to grant a variance from the Guidelines after promulgation but before adoption of a proposed amendment." *United States v. Ruiz-Apolonio*, 657 F.3d 907, 917 (9th Cir. 2011) (citation omitted).    Nevertheless, "[t]hat the Commission has promulgated a not-yet-adopted amendment that is very likely to be adopted and that would result in reduced Guidelines ranges does not render a district court's failure to grant a variance substantively unreasonable."  *Id.* at 918 (citation omitted).  The district court, therefore, was not compelled to apply the anticipated amendments to U.S.S.G. § 2L1.2 in fashioning a substantively reasonable sentence. *See id.* ("[W]here an amendment has been promulgated but has not yet been adopted, district courts are not *required* to consider that amendment in the § 3553 analysis . . .") (citation omitted) (emphasis in the original).

## C. Supervised Release

Figueroa-Beltran contends that the district court procedurally and substantively erred in imposing three years of supervised release because U.S.S.G. § 5D1.1 provides that supervised release is not warranted when a defendant will be removed from the United States after his incarceration.

We are unpersuaded by Figueroa-Beltran's procedural and substantive challenges to the district court's imposition of three years of supervised release.  Pursuant to U.S.S.G. § 5D1.1(c) (2015),

> The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

However, we have "emphasized the importance of giving meaning to all words in Section 5D1.1 to ensure none are rendered superfluous." *United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012) (citation omitted). "In doing so, [we] interpret[ ] the Guidelines' use of the word 'ordinarily' as advising courts that for most deportable aliens, imposing a term of supervised release is unnecessary as the deterrent and protective effect of supervised release is served by the possibility of a future prosecution for illegal re-entry, while still leaving the court discretion of imposing supervised release in uncommon cases where added deterrence and protection are needed."  *Id.* (citation and some internal quotation marks omitted).  As a result, "the word 'ordinarily' in Section 5D1.1 is not mandatory."  *Id.* (citation omitted).

The district court "gave a specific and particularized explanation that supervised release would provide an added measure of deterrence and protection based on the facts of [Figueroa-Beltran's] case." *Id.* The district court reasoned that:

> [Figueroa-Beltran's] rationale [for a lower sentence] . . . justifie[d] an imposition of supervised release, which will add as an added measure of deterrence to a defendant who believes that once he has been punished for one crime, it should not be taken into consideration with respect to any future sentence. . . . So, three years will provide an added measure of deterrent to this individual.

The district court's reasoning was in response to Figueroa-Beltran's statement during his allocution that he had already "paid for" his felony, thereby implying that he was not subject to any additional consequences.

Finally, contrary to Figueroa-Beltran's assertions, the district court did not plainly err in calculating the range for the supervised release period.[6] The PSR indicated that the district court "may impose a term of supervised release of not more than three years" under 18 U.S.C. § 3583(b)(2). Pursuant to 18 U.S.C. § 3583, the district court was authorized to impose "not more than three years" on account of Figueroa-Beltran's commission of "a Class C or Class D

---

[6] We review for plain error because Figueroa-Beltran did not object to the district court's calculation of the supervised release range. *See Herrera*, 974 F.3d at 1045.

felony."[7]   18 U.S.C. § 3583(b)(2) (2016).   Although the district court did not specify that the supervised release range was based on a Class C felony, the district court's imposition of three years of supervised release comported with 18 U.S.C. § 3583(b)(2) and U.S.S.G. § 5D1.2(a)(2) (2015) (providing supervised release for "[a]t least one year but not more than three years for a defendant convicted of a Class C or D felony").

## IV.    CONCLUSION

Based on the guidance provided by the Nevada Supreme Court in response to our certification of questions, we hold that Figueroa-Beltran's conviction for possession of cocaine in violation of NRS § 453.337, a divisible statute, supported the sixteen-level enhancement applied by the district court.

We reject Figueroa-Beltran's challenges to his sentence and term of supervised release.  The district court did not err in declining to reduce Figueroa-Beltran's sentence due to proposed amendments to the Sentencing Guidelines.  The district court also imposed a procedurally and substantively reasonable sentence at the low end of the guidelines range, and properly ordered three years of supervised release as an added measure of deterrence.

    **AFFIRMED.**

---

[7] Figueroa-Beltran's conviction in violation of 8 U.S.C. § 1326 was a Class C felony because his maximum sentence was "less than twenty-five years but ten or more years."  18 U.S.C. § 3559(a)(3); *see also* 8 U.S.C. § 1326(b)(1) (providing for imprisonment of "not more than 10 years").